J-A18018-14

2014 PA Super 204

| | |
|---|---|
| M.E.V.<br><br>Appellant<br><br>v.<br><br>F.P.W.<br><br>Appellee | IN THE SUPERIOR COURT OF<br>PENNSYLVANIA<br><br><br><br><br><br>No. 262 MDA 2014 |

Appeal from the Order of January 8, 2014,
In the Court of Common Pleas of Clinton County
Civil Division at No.: 1132-10

BEFORE: LAZARUS, J., WECHT, J., and MUSMANNO, J.

OPINION BY WECHT, J.:                    **FILED SEPTEMBER 19, 2014**

M.E.V. ("Mother") appeals the custody order entered on January 8, 2014. In its January 2014 order, the trial court reversed a preexisting August 2012 custody order, in which the trial court had granted Mother primary physical custody of the parties' two children, daughter I.W. (born in March 2007) and son F.W. (born in June 2008) (collectively, "the Children"). In effect, the January 2014 order transferred primary physical custody to F.P.W. ("Father"). Pennsylvania law directs courts, in deciding any petition seeking the modification of an existing custody order, to consider individually a raft of factors enumerated by statute. The trial court in this case did not conduct such an inquiry in tandem with its 2014 order, instead incorporating by reference its 2012 findings of fact, even though various aspects of the parties' relevant circumstances undisputedly had changed in the interim. We find that the trial court did not fulfill its statutory obligations

in disposing of Father's petition to modify custody. Consequently, we vacate the trial court's order and remand for further proceedings in conformity with the discussion to follow.

Beginning on January 24, 2011, new legislation[1] prescribed a number of factors that a trial court must consider discretely in entering or modifying a custody order:

> **(a) Factors.**—In ordering any form of custody, the court shall determine the best interest of the child by considering all relevant factors, giving weighted consideration to those factors which affect the safety of the child, including the following:
>
> (1) Which party is more likely to encourage and permit frequent and continuing contact between the child and another party.
>
> (2) The present and past abuse committed by a party or member of the party's household, whether there is a continued risk of harm to the child or an abused party and which party can better provide adequate physical safeguards and supervision of the child.
>
> (2.1) The information set forth in section 5329.1(a)(1) and (2) (relating to consideration of child abuse and involvement with protective services).[2]
>
> (3) The parental duties performed by each party on behalf of the child.
>
> (4) The need for stability and continuity in the child's education, family life and community life.

_____

[1] *See* Act of Nov. 23, 2010, P.L. 1106, No. 112, § 2 (effective in 60 days).

[2] Section 2.1 became effective January 1, 2014, *see* Act of Dec. 18, 2013, P.L. 1167, No. 107, § 1. This factor has no clear application under the facts of this case.

(5)     The availability of extended family.

(6)     The child's sibling relationships.

(7)     The well-reasoned preference of the child, based on the child's maturity and judgment.

(8)     The attempts of a parent to turn the child against the other parent, except in cases of domestic violence where reasonable safety measures are necessary to protect the child from harm.

(9)     Which party is more likely to maintain a loving, stable, consistent and nurturing relationship with the child adequate for the child's emotional needs.

(10)     Which party is more likely to attend to the daily physical, emotional, developmental, educational and special needs of the child.

(11)     The proximity of the residences of the parties.

(12)     Each party's availability to care for the child or ability to make appropriate child-care arrangements.

(13)     The level of conflict between the parties and the willingness and ability of the parties to cooperate with one another.  A party's effort to protect a child from abuse by another party is not evidence of unwillingness or inability to cooperate with that party.

(14)     The history of drug or alcohol abuse of a party or member of a party's household.

(15)     The mental and physical condition of a party or member of a party's household.

(16)     Any other relevant factor.

23 Pa.C.S. § 5328(a).

Notably, this Court has held that it is not sufficient that the trial court merely state its reasoning on the record in open court or conclusorily assert that it has considered the enumerated factors in reaching its disposition.

The Act requires a court to consider all of the § 5328(a) best interest factors when "ordering any form of custody." 23 Pa.C.S. § 5328(a) . . . . [Subs]ections 5323(a) and (d) reinforce this mandate by requiring a court to delineate the reasons for its decision when making an award of custody either on the record or in a written opinion. Mere recitation of the statute and consideration of the § 5328(a) factors *en masse* is insufficient. *C.B. v. J.B.*, 65 A.3d 946, 950 (Pa. Super. 2013). A trial court's failure to place its reasoning regarding the § 5328(a) factors on the record or in a written opinion is an error of law. *J.R.M. v. J.E.A.*, 33 A.3d 647, 652 (Pa. Super. 2011). Accordingly, in *C.B.*, when the trial court merely stated that it had considered the § 5328(a) factors, we held that the trial court's on-the-record explanation was insufficient under the statute. 65 A.3d at 950-51. Similarly, in *M.P. v. M.P.*, we found error where the trial court listed the § 5328(a) factors but failed to apply them. 54 A.3d 950, 955-56 (Pa. Super. 2012).

*S.W.D. v. S.A.R.*, ___ A.3d ___, 2014 PA Super 146, at *5 (Pa. Super. July 11, 2014) (citations modified). "The best interests standard, decided on a case-by-case basis, considers all factors [that] legitimately have an effect upon the child's physical, intellectual, moral and spiritual well-being." *Saintz v. Rinker*, 902 A.2d 509, 512 (Pa. Super. 2006) (quoting *Arnold v. Arnold*, 847 A.2d 674, 677 (Pa. Super. 2004)).

In a prior memorandum, in which this Court affirmed the August 2012 custody order that directly preceded the January 2014 custody order now presented for our review, we provided the following account of this case's factual and procedural history up to that time:

Father and Mother were never married. On August 12, 2010, Mother filed a complaint for custody seeking primary physical custody of the Children. The trial court held a hearing on the custody complaint on September 7, 2010. On that same date, pursuant to an agreement, the trial court entered a custody order, under which the parties were awarded shared legal

custody of the Children, and shared physical custody, alternating on a week on/week off basis, except when the parties had Protection from Abuse ("PFA") orders in effect.

On August 31, 2011, Father filed a petition for modification of custody and for contempt, seeking primary physical custody of the Children and partial physical custody with Mother every other weekend. Father also sought to hold Mother in contempt of the September 7, 2010 custody order because she allegedly had moved from Clinton County to Centre County, in violation of a standard condition incorporated into the custody order that prohibited her from moving her residence from Clinton County without written permission from the trial court. Father stated that he had filed a PFA petition with regard to an incident between the parties and that a hearing on the PFA petition was scheduled to occur on September 2, 2011.

On September 1, 2011, Mother filed a motion to modify the existing custody order, in which she alleged that she had obtained a temporary PFA order against Father in Centre County, where she was residing. Mother asserted that Father filed a petition for a PFA order against her in Clinton County after he was served with the temporary PFA order from Centre County. Mother sought primary physical custody of the Children, partial, supervised physical custody with Father, and shared legal custody. The trial court scheduled a custody hearing for September 27, 2011. The certified record includes transcripts from PFA hearings held on September 2, 9, and 27, 2011. At the hearing on September 27, 2011, the trial court also heard testimony from Father and Mother with regard to their custody modification petitions.

In an order dated September 29, 2011, and entered September 30, 2011, the trial court directed Mother and Father to be examined by Robert J. Meacham, M.S. . . ., a licensed psychologist, on October 12, 2011. The trial court further ordered that the existing custody order from September 7, 2010[,] would remain in effect, and provided that Mother was not permitted to move from Centre County without written permission of the trial court. The trial court also issued directives with regard to matters alleged in Father's PFA petition, and directed that the PFA petition would be dismissed.

On August 17, 2012, the trial court held a hearing on the modification of custody petitions. After the final custody

hearing, the trial court found the following with regard to the factors set forth at 23 Pa.C.S. § 5328(a) of the new Child Custody Act ("the Act")[:]

1. While both parents have numerous faults and must abandon their continuing effort to "one up" the other with accusations of abuse and improper conduct, we believe Mother to be the parent more likely to encourage and permit contact between the [C]hildren and [Father].

2. Throughout this litigation both parents have charged the other with abuse, both of a major and minor nature. We consider these accusations to be of little relevance except as a manifestation of the immaturity and instability of these parents.

3. While Father suggests he performs the housekeeping duties when the [C]hildren are with him, it would appear that he frequently travels to Williamsport[,] where the members of his extended family reside[,] or relies on third parties for child care. The household responsibilities in Mother's home are met by Mother or [M.H., Mother's then husband ("Husband")].

4. The past several years of Mother's life have been marked by substantial instability, including at least one "quasi[-]reconciliation" between the parties. Over the past several years, Father has maintained some semblance of stability by continuing to reside at the . . . former "marital residence."

5. Because all of Father's extended family resides twenty-five miles away in Williamsport, this factor is clearly to Father's advantage. Mother has no extended family in the area besides her fifteen-year-old daughter[,] with whom she has only recently become reunited. Mother's other family resides in New York City and plays little, if any, role in the lives of the [C]hildren.

6. Father has no other children; as noted previously, Mother has a fifteen-year-old daughter ["Daughter"] who now resides with her and a stepdaughter who resides with [Husband] and Mother when Mother is residing with [Husband].

7. Because of the age of the Children[3], they have not been asked to express a preference with regard to custody.

8. We suspect Mother's testimony regarding Father's "harassment" of [Husband] has some legitimacy. Whether Father desires to reconcile with Mother or simply wants no one else to have her is a question [that] remains unclear. Based on our observations of the parties, we reject the suggestion that Mother has made any effort to turn the [C]hildren against Father.

9. The only "player" in this drama in whom we have much confidence is [Husband,] who appears quite stable and capable notwithstanding the twists and turns of Mother's life. Our decision to award primary custody to Mother is conditioned specifically upon her moving into [Husband's] home and remaining there. If Mother is in [Husband's] home, we believe it clear that she is the parent more likely to maintain a loving, stable, consistent, and nurturing relationship with [Children that is] adequate for their emotional and other needs.

10. . . . [S]o long as Mother continues to reside with [Husband], she is the parent more likely to attend to the daily physical, emotional, developmental, educational, and special needs of [the Children]. Moreover, that is the home in which there is a "two[-]parent" family as well as other children.

11. Because the parents reside a substantial distance from each other, an [o]rder providing for shared physical custody is not feasible.

12. Both parents have arranged for and are able to afford child care arrangements when the [C]hildren are not in school. As noted in a prior [o]rder, we have concern with some of the individuals with whom Father has associated.

---

[3]   At the time of the excerpted custody order, I.W. was approximately forty-one months old and F.P.W. was approximately twenty-six months old.

13. The level of conflict existing between these parents must not continue. The entry of this [f]inal [o]rder regarding primary [physical] custody will enable Mother to be more comfortable in cooperating with Father, although we have some concern with Father's willingness to reciprocate.

14. While not sufficient to meet the standard of "beyond a reasonable doubt," we are extremely concerned about Mother's abuse of drugs to which she has access through her employment . . . . On the other hand, Father admittedly has a serious problem with alcohol and has only recently regained his operating privileges as a result of two driving under the influence convictions. On balance, these addictions cancel out.

15. No testimony was presented with regard to any physical illnesses of either parent. Any suggestion that Mother may have some mental problems may well be a result of what we accept, based on an evaluation of credibility, as a pattern of harassment by Father.

During this litigation, the parties were referred to [Mr. Meacham], who has submitted a number of reports including a Psychological Evaluation dated February 13, 2012. While we have carefully considered the observations made by [Mr. Meacham], as previously noted in our discussion of the [s]tatutory [f]actors, the key to our decision to award primary physical custody to Mother is [Husband], with whom we were very impressed and who we believe will provide Mother the support she needs to be primarily responsible for [the Children]. Mother is cautioned, however, that [c]ustody [o]rders are always reviewable and that, should she not maintain her relationship with [Husband] or should she not enroll [I.W.] in Our Lady of Victory kindergarten and [F.W.] in a related day care, a prompt hearing will be held to reconsider this [o]rder.

Trial Court [Opinion ("T.C.O.")], 8/20/2012, at 1-4 [citations omitted].

On August 20, 2012, the trial court entered a final custody order, awarding the parties shared legal custody, primary physical custody of the Children to Mother, and partial physical custody to Father in accordance with a schedule.

- 8 -

*M.E.V. v. F.P.W.*, 1560 MDA 2012, Slip Op. at 1-7 (Pa. Super. May 31, 2013) (unpublished memorandum).

Father appealed the trial court's decision, and this Court affirmed. *Id.* Father's arguments primarily consisted of challenges to the trial court's findings of fact and credibility determinations regarding the parties as to findings that were supported by competent evidence of record. As such, Father's arguments were unavailing: Because the trial court's findings were supported by the evidence of record, we declined to disturb them. *Id.* at 11-12.

In July of 2013, Mother filed a complaint in divorce against Husband, who responded by filing a "Petition for Exclusive Possession of the Marital Residence." On August 15, 2013, Mother obtained alternate housing for herself and the Children, and began to move her possessions into the new home; during that period, which did not go terribly smoothly between Mother and Husband and was marred by at least one undisputed physical altercation in which Husband repeatedly pushed Mother and gave her a black eye, the Children stayed primarily with Father. The three-bedroom house Mother arranged to rent is minutes away from Mother's and Husband's former marital home, fewer than two miles from the Children's school, and approximately four miles from Mother's place of employment. The house also is located on a bike path that Mother and the Children used, and is part of a community with a pool, tennis courts, basketball courts, and a playground.

At the time of the 2013 custody hearings that led to the instant custody order, Mother earned approximately $65,000 per year as a registered nurse in the catheterization department at Mount Nittany Medical Center. Mother worked a full-time weekday schedule from 7:35 a.m. until 5:00 p.m. Mother's call schedule was planned around the times that I.W. and F.W. were with Father and did not intrude upon her parental obligations.

The Children attended Our Lady of Victory Catholic School; at the time of the hearings, F.W. was in kindergarten and I.W. was in first grade. I.W. was doing well in school. F.W. was doing well academically, but allegedly had some behavioral and/or developmental problems. The Children participated in many activities while in Mother's care, and, following her separation from Husband, Mother provided all transportation for the Children to and from their activities.

When Father learned that Mother had filed a divorce complaint and a PFA action against Husband, Father filed a petition for modification of custody on August 30, 2013. After a September 4, 2013 hearing, the trial court issued an order on September 9, 2013, in which the court directed that the Children again meet with Mr. Meacham. By order dated October 4, 2013, the trial court declined immediately to modify custody, opining that it would not be in the best interests of the Children to change schools until at least the end of the fall semester. The trial court scheduled another hearing for December 30, 2013. Following that hearing, the trial court determined that it was not in the Children's best interests to continue Mother's primary

physical custody. In so ruling, the trial court, without discussion or analysis, incorporated by reference its 2012 analysis of the statutory factors, but found that primary custody should shift to Father because Mother had not continued to live with Husband, the circumstance upon which the trial court expressly had conditioned her primary physical custody in its 2012 custody order. Accordingly, by order entered on January 8, 2014, the trial court transferred primary physical custody of the Children to Father and provided Mother with partial physical custody. Mother filed an Emergency Motion for Reconsideration and Request for Evidentiary Hearing, which the trial court denied in an order entered on January 14, 2014.

On January 30, 2014, Mother filed a timely notice of appeal of the trial court's custody order. Mother contemporaneously filed a concise statement of errors complained of on appeal in conformity with Pa.R.A.P. 1925(a)(2)(i) and (b). On February 3, 2014, the trial court entered a Rule 1925(a) opinion, in which it incorporated by reference its January 8, 2014 custody order and its January 13, 2014 order denying reconsideration.

Mother presents the following issues and sub-issues for our consideration:

I.    Whether the trial court erred in failing to consider each statutorily mandated factor enumerated in 23 Pa.C.S. § 5328(a)?

    A.    Whether the trial court erred in relying upon its August 20, 2012 analysis of custody factors instead of performing a new analysis based on current evidence?

B.   Whether the trial court erred in failing to consider the impact a change in custody would have upon the Children insofar as it necessitated relocating?

II.   Whether the trial court's conclusions were unreasonable and not supported by competent evidence?

A.   Whether the trial court erred in concluding Mother is experiencing "continued instability" when competent evidence did not support this finding?

B.   Whether the court erred in concluding that Mother's separation from Husband was a factor significant enough to warrant a change in custody absent competent evidence showing the separation was contrary to the Children's best interests?

C.   Whether the court erred in determining that Father's new relationship with a woman he intends to marry coupled with Mother's alleged instability support the court's conclusion that a change in primary custody was in the Children's best interests?

D.   Whether the court erred in relying upon the memorandum prepared by Mr. Meacham in that the memorandum did not consider a change in custody and portions of the memorandum were misinterpreted by the court?

III.   Whether the court erred in accepting as competent evidence statements contained in Husband's divorce pleadings, including pleadings that were withdrawn by Husband prior to the hearing?

Brief for Mother at 7-9 (nomenclature and capitalization modified for clarity).

Because we find that the considerations raised in issue I – and to a lesser extent issue II – compel vacatur of the trial court's custody order, we need address only those issues.

Our scope and standard of review of an appeal from a custody order is as follows:

In reviewing a custody order, . . . [w]e must accept findings of the trial court that are supported by competent evidence of record, as our role does not include making independent factual determinations. In addition, with regard to issues of credibility and weight of the evidence, we must defer to the presiding trial judge who viewed and assessed the witnesses first-hand. However, we are not bound by the trial court's deductions or inferences from its factual findings. Ultimately, the test is whether the trial court's conclusions are unreasonable as shown by the evidence of record. We may reject the conclusions of the trial court only if they involve an error of law, or are unreasonable in light of the sustainable findings of the trial court.

**V.B. v. J.E.B.**, 55 A.3d 1193, 1197 (Pa. Super. 2012) (citations omitted).

As noted, section 5328 calls for the trial court to consider, in connection with any decision affecting custody, each of the fifteen enumerated factors as well as any other relevant factors, and to elucidate on the record how it has weighed those considerations. The simplest way to convey the insufficiency of the trial court's reliance upon seventeen-month-old findings in lieu of reviewing the statutory factors anew is to examine, factor by factor, those material considerations that undisputedly have changed, as well as those that the trial court might find have changed after sifting anew through the parties' competing claims regarding events that occurred in the wake of the 2012 custody order. We do so in the order in which the factors appear in section 5328.[4]

_____

[4] We focus upon the factors as to which circumstances most obviously have changed materially. To that end, we omit to address factors one, two, five, eight, eleven, twelve, and fifteen from our discussion. In excluding
*(Footnote Continued Next Page)*

- 13 -

Factor three concerns "[t]he parental duties performed by each party on behalf of the child." 23 Pa.C.S. § 5328(a)(3). In 2012, the trial court noted Father's frequent trips to Williamsport, where his family resided, and his reliance upon certain occasions upon third parties for child care. The court further observed that household responsibilities for Mother fell upon both Mother and Husband, with Husband contributing substantially due to Mother's work schedule.

In the interim between the 2012 and 2014 custody orders, Mother and Father experienced significant changes in their respective domestic situations. Father met his now-fiancée, B.M., who moved into Father's home in January 2013. *See* Notes of Testimony ("N.T."), 9/4/2013, at 64. B.M. brought with her a daughter from a prior relationship, E.L., who was eight years old in September of 2013. *Id.* Mother's life took a contrary turn when Husband filed for divorce in July 2013, after which she moved alone into a new home with her older daughter and the Children. *Id.* at 3. Thereafter, Mother substantially modified her work schedule to a five-day-per-week, business-hour schedule with seven to nine days on call, which her employer allowed her to schedule solely when the Children were scheduled to be in Father's care. *Id.* at 19, 26; *see* N.T., 12/30/2013, at 48 (Mother: "I'm never on call when I have the kids."). Consequently, the allocation of

*(Footnote Continued)* ───────────

certain factors from discussion, we intend no prejudice to the trial court's discretion to revisit any factors it deems relevant on remand.

household responsibilities in Father's and Mother's respective homes necessarily changed significantly. The trial court did not assess this factor in light of these changed circumstances.

Factor four calls for the trial court to consider "the need for stability and continuity in [the Children's] education, family life and community life." 23 Pa.C.S. § 5328(a)(4). Regarding this factor, the trial court found in 2012 that Mother's life recently had been "marked by substantial instability," while Father's life had "some semblance of stability" due to the continuity of his living arrangement. Since then, as noted, while Father has remained in the same domicile, to that domicile has been added a fiancée and her young daughter, E.L. (age eight as of the September 4, 2013 hearing), from a prior relationship. N.T., 9/4/2013, at 64. Conversely, Mother's marital and residential situation has changed considerably with her separation from Husband and her relocation from her marital residence to her new home. While this move might be interpreted as evidence of further instability, it is also notable that Mother signed a three-year lease for her new residence, which is spacious and surrounded by numerous family amenities. *Id.* at 4, 29-30. Despite manifestly changed circumstances, the trial court did not review this factor anew.

Factor six concerns the Children's sibling relationships. *See* 23 Pa.C.S. § 5328(a)(6). This, too, has changed with respect to both households. Mother's formerly estranged daughter, C.A., joined her household while she still lived with Husband, but at the time of the 2012

custody proceedings she had very recently done so, leaving her a somewhat unknown quantity. Moreover, Mother's separation from Husband also separated her and the Children from Husband's child from a prior relationship, M.H., with whom the Children had established a relationship. Based upon Mother's materially undisputed 2013 testimony, however, her daughter has integrated successfully into her new household, is flourishing at school, and she and the Children averredly have mutual interest in each other. Meanwhile, Father's fiancée has primary custody of her young daughter; neither were Father's now-fiancée nor her daughter in the picture in 2012. Plainly all of the sibling, step-sibling, and quasi-sibling relationships in this case have either emerged or evolved since the trial court's 2012 order was entered in ways that bear materially on the Children's best interests. The trial court did not assess this factor despite these changed circumstances.

Factor seven concerns "the well-reasoned preference[s] of the [Children]," taking into consideration their "maturity and judgment." 23 Pa.C.S. § 5328(a)(7). In 2012, when the children were two and three years old, the trial court determined that their tender years rendered their testimony unnecessary. In the autumn of 2013, they were in kindergarten and first grade, respectively. Although Mr. Meacham indicated in a 2013 memorandum that "[n]either child is capable of expressing an informed preference regarding custody," the trial court did not address this point directly. Inasmuch as their ages were not manifestly inconsistent with

testifying regarding their experiences in their parents' respective households, and given that Mr. Meacham's report does not bind the trial court, it was incumbent upon the trial court to address and explain this consideration anew.

Factor nine obligated the trial court to consider "[w]hich party is more likely to maintain a loving, stable, consistent and nurturing relationship" with the Children. 23 Pa.C.S. § 5328(a)(9). While the parties' and others' 2013 testimony does not appear to raise serious doubts that the Children, who by all accounts are doing quite well despite the domestic turmoil to which they have been exposed by and with both parents throughout their childhoods, the nature of the trial court's 2012 finding on this point necessitates further discussion. In its 2012 order, the trial court denigrated the competency of both Father and Mother by asserting that "[t]he only 'player' in this drama in whom [the trial court has] much confidence is [Husband,] who appears quite stable and capable notwithstanding the twists and turns of Mother's life." T.C.O., 9/4/2014, at 3 ¶9. As well, it was in its discussion of the ninth factor that the trial court first signaled that Mother's primary custody would be "conditioned specifically upon her moving into [Husband's] home and remaining there." *Id.* The trial took the apparent view that Mother's custody rights, such as they were, were almost entirely derivative of Husband's presence.

We begin by noting the obvious: Mother no longer lives with Husband. Moreover, the "quite stable and capable" Husband, evidently undisputedly,

- 17 -

since has acted violently against Mother; in the critical altercation, which occurred when Mother was in the process of moving out of Husband's home, Husband shoved mother repeatedly and gave her a black eye.[5]  **See** N.T., 9/4/2013, at 8-11.  Just as importantly, in relying so heavily upon Mother's and Father's respective marital statuses, the trial court not only considered but foregrounded a circumstance that our Court has minimized as a relevant consideration, standing alone, in custody actions.  **See Jordan v. Jordan**, 448 A.2d 1113, 1117 (Pa. Super. 1982) ("The lower court misperceives the law [in citing the father's remarriage as evidence of stability].  **There is no presumption in our child custody law favoring two[-]parent families.** The **sole criterion** in determining custody disputes . . . is the best interest and permanent welfare of the child." (internal quotation marks omitted; emphasis added)).  In suggesting that Mother's favored position *vis-à-vis* custody was contingent on the integrity of her marriage to Husband, the trial court erred not only by issuing a ruling in considerable tension with Pennsylvania case law, but also by creating a perverse circumstance under which Mother, in deciding whether to remain in a marriage with Husband,

_____

[5]    According to Mother, this was not the first time she had suffered abuse at the hands of Husband and Father.  Evidently, the trial court heard testimony before entering its 2012 order (and before the court suggested that it considered Husband to be the only trustworthy party to this case) to the effect that Husband had attempted to forcibly remove Mother's wedding ring during an altercation.  **See** N.T., 9/4/2013, at 11-12.  Mother also testified that Father was violent and pushed her up against a car during a September 9, 2012 custody exchange.  **See id.** at 31-32.

might also perceive that she simultaneously was deciding whether she wished to preserve primary physical custody of her children. No good can come from interfering with such important family decisions, especially when it is readily foreseeable that a mother might choose to stay with an abusive husband solely to preserve her custody in derogation of her children's best interests. While the incidents of abuse cited undisputedly were isolated, they hint at the more serious quandaries the trial court's reasoning might engender in another case; they also underscore our concerns regarding the trial court's failure to review this factor in light of the parties' materially changed circumstances. The trial court declined to do so, except insofar as it cited its prior decision to make custody contingent on Mother's marriage to and cohabitation with Husband as its primary justification for flipping its prior custody order on its head.

Factor ten requires the trial court to consider the related question as to "[w]hich party is more likely to attend to the daily physical, emotional, developmental, educational and special needs of" the Children. 23 Pa.C.S. § 5328(a)(10). In 2012, the trial court determined that Mother would be more likely to attend to these needs "**so long as Mother continues to reside with [Husband]**," and doubled down on its observation that "that is the home in which there is a 'two[-]parent family.'" T.C.O., 8/20/ 2012,

at 3 ¶10 (emphasis added).[6]   Moreover, even if these considerations were foregrounded appropriately by the trial court, circumstances in both parties' households have changed considerably.   While the trial court acknowledged as much in entering its 2014 order, the fact remains that it conducted no probing examination of this factor.

Factor thirteen concerns "[t]he level of conflict between the parties and [their] willingness and ability . . . to cooperate with one another."   32 Pa.C.S. § 5328(a)(13).   In 2012, the trial court noted an unacceptable level of conflict between the parties, and speculated that the entry of its custody order would "enable Mother to be more comfortable in cooperating with Father, although we have some concern with Father's willingness to reciprocate."  *Id.* at 3 ¶13.   Once again, while certain facts may be disputed on this point, what cannot be disputed is that both parties have alleged that the other violated, or otherwise impeded faithful adherence to, the terms of the 2012 custody order in numerous particulars.  ***See, e.g.***, N.T., 9/4/2013,

_____

[6]   We recognize that this Court affirmed the trial court's heavy reliance upon this factor in affirming the trial court's 2012 custody order.  While we are loath to call into question our prior determinations, we note that this Court did not signal in any way that Mother pressed the trial court's reliance upon the parties' marital statuses in connection with that appeal. Accordingly, it is possible that this particular concern simply was not before us at that time.  The trial court's 2012 determination, thus, was dubious for the same reasons set forth in connection with factor nine.  In any event, herein, our ruling is dictated primarily by the trial court's failure to review all of the subsection 5328(a) factors in light of various changed circumstances, of which the parties' marital statuses are only one.

at 36-41, 46-47 (Mother testifying regarding Father's non-compliance); N.T., 12/4/2013, at 8-9 (vice-versa). The trial court's failure expressly to address these ongoing issues anew in assessing the parties' status as of the 2013 hearings and the entry of the 2014 custody order again confounds the court's obligation to conduct an assessment of the circumstances as it found them at that time, not as it found them nearly a year and a half earlier.

Factor fourteen requires the trial court to consider "[t]he history of drug or alcohol abuse of a party." In 2012, the trial court expressed "extreme[] concern[] about Mother's abuse of drugs to which she has access through her employment," and credited the testimony of a healthcare provider calling into question Mother's explanation as to why she had tested positive on an earlier drug test.[7] The court also noted that "Father admittedly has a serious problem with alcohol" and had only recently regained his driver's license, following a suspension arising from a second conviction for driving under the influence.

The 2013 testimony raised serious questions regarding the trial court's 2012 characterization of Mother's relationship with drugs. Mother testified

---

[7] Mother tested positive on one occasion for ephedra, a stimulant, which she contended had been administered to counteract anesthesia at the conclusion of a surgical procedure. **See** Report of Robert J. Meacham, 6/7/2012, at 3. The record substantiates no other positive drug tests nor Mother's misappropriation of pharmaceuticals from her employer or elsewhere.

that no sanction or disciplinary action had resulted from an investigation that appeared to have been triggered by an "anonymous" complaint allegedly made by Father.[8]   The circumstantial evidence strongly suggests that Mother's behavior was of far less concern to her employer than it was to the trial court circa 2012:  The nursing board exonerated her.  More tellingly, her well-compensated employment continued except for the three weeks when she was suspended without pay while the nursing board investigated that complaint.  Moreover, evidently she was viewed with sufficient favor by her employer that, once she became sole care-giver to the Children, her employer cooperated in negotiating a work schedule that complemented her child-care responsibilities.  At a minimum, the trial court should have reconsidered this factor, including a reexamination of Father's relationship with alcohol.  In adverting to its out-of-date 2012 findings, the court failed to do so.

Already, we have held in no uncertain terms that the trial court may not merely rely upon conclusory assertions regarding its consideration of the

_____

[8]    When the trial court asked Father directly whether he had been the source of the complaint to the nursing board, he neither confirmed nor denied the accusation.  *See* N.T., 9/4/2013, at 41 (Father: "Can I plead the fifth, sir?").  However, Father admitted that, on an earlier occasion, he filed what we read as a questionable complaint with Children and Youth Services; CYS cleared Mother following its investigation of the allegations.  Moreover, the CYS complaint followed closely on the heels of Mother seeking a PFA against Father, following the above-mentioned alleged violent conduct of Father during a September 2012 custody exchange.  *See id.* at 33-35.

subsection 5328(a) factors in entering an order affecting custody. **See S.W.D.**, 2014 PA Super 146, at *5 ("Mere recitation of the statute and consideration of the § 5328(a) factors *en masse* is insufficient. **C.B. v. J.B.**, 65 A.3d 946, 950 (Pa. Super. 2013). A trial court's failure to place its reasoning regarding the § 5328(a) factors on the record or in a written opinion is an error of law. **J.R.M. v. J.E.A.**, 33 A.3d 647, 652 (Pa. Super. 2011)."). Confronted with the question for the first time in the instant case, we hold, essentially for the same reasons, that a trial court may not merely advert to prior, manifestly outdated findings of fact in lieu of express and fully explained reconsideration of those factors in the light of any changes in the parties' circumstances that occurred after the prior ruling and attendant explanation. We further emphasize that, standing alone, the apparently **undisputed** changes affecting the Children and the parties in this case between the trial court's August 2012 order and explanation and the court's January 2014 order suffice by a considerable margin to require new fact-finding.[9] Indeed, inasmuch as no consideration exceeds in importance that of the Children's best interests, it is troubling that the trial court deemed it unnecessary to reevaluate in depth the Children's own

_____

[9] We acknowledge the prospect that a given delay between an initial, duly explained custody order and one that follows shortly thereafter, which expressly is based upon the earlier findings and conclusions, may be so brief as to militate in favor of affirmance, depending upon the facts and circumstances at issue in such a case. This is not that case.

evolution and development in the tender years between their second and sixth years, during which a child's rate of development and growth in every personal, domestic, scholastic, and social particular simply is dizzying.

In summary, we conclude that the trial court failed to provide the requisite contemporaneous review of the section 5328 factors in determining that primary physical custody of the Children should be removed from Mother, who had been primarily responsible at the time of the instant order for their daily care, and for overseeing their schooling and the lion's share of their extracurricular and social activities. An updated, comprehensive review as prescribed by subsection 5328 is necessary to ensure that the custody order entered is consistent with the best interests of the Children. Accordingly, we vacate the trial court's order, and remand the matter to the trial court for a new ruling, considering the best interest factors in accordance with this Opinion.

Order vacated. Case remanded. Jurisdiction relinquished.

Musmanno, J. joins the opinion.

Lazarus, J., concurs in the result.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/19/2014

- 24 -