J-S25030-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| R.W. | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | |
| v. | |
| M.S. | |
| Appellee | No. 1810 WDA 2015 |

Appeal from the Order November 4, 2015
In the Court of Common Pleas of Crawford County
Civil Division at No(s): F.D. 2014-198 V

BEFORE:  FORD ELLIOTT, P.J.E., MUNDY, J., and JENKINS, J.

MEMORANDUM BY MUNDY, J.:                    **FILED MAY 06, 2016**

Appellant, R.W. (Mother), appeals from the November 4, 2015 order granting Appellee, M.S. (Father), primary physical custody of their minor son, X.S.  After careful review, we affirm.

The relevant factual and procedural history, as gleaned from the certified record, is as follows.  X.S. was born in August 2010.  While the details are not clear from the record, Mother and X.S. previously resided in Mississippi.  In July 2013, Mother relocated with X.S. to Crawford County, Pennsylvania.  Mother currently resides in Crawford County with her parents, her fiancé, A.F, and her daughter, P.W., who is the child of A.F.[1]  Father resides in Alabama with his wife, S.S., their daughter, and Father's

_____

[1] Mother also has a third child, who resides in Mississippi with her father.

stepdaughter. Father also has partial physical custody of his daughter from a previous marriage.

On May 30, 2014, Mother filed a petition for modification of custody in Crawford County.[2] The trial court entered an order on December 9, 2014, awarding Mother primary physical custody of X.S., and awarding Father partial physical custody during the summer. Both parents were awarded shared legal custody. On April 22, 2015, Mother, acting *pro se*, filed a petition to modify the December 9, 2014 order. A custody mediation took place on May 22, 2015, and, on May 29, 2015, an order was entered which reduced Father's partial physical custody of X.S. during the summer of 2015. Mother filed a third petition for modification of custody on July 9, 2015, which resulted in an additional custody mediation on July 30, 2015. On August 3, 2015, the trial court entered an order which slightly extended Father's partial physical custody during that summer. On August 18, 2015, Father, also acting *pro se*, filed a request for a *de novo* custody hearing.

A *de novo* custody hearing took place on October 21, 2015, during which Mother was represented by counsel, and Father remained *pro se*. During the hearing, the trial court heard the testimony of Mother; Father's wife, S.S.; Father; the maternal grandmother of X.S., E.W.; the maternal

---

[2] Mother averred in her petition that a custody order had previously been entered on March 27, 2014, in the Chancery Court of Itawamba County, Mississippi, pursuant to which Mother was awarded primary physical custody of X.S. ***See*** Petition to Modify Custody, 5/30/2014, at ¶ 4, Exhibit 1.

grandfather of X.S., R.W.; and Mother's fiancé, A.F. On November 4, 2015, the trial court entered the subject custody order awarding primary physical custody of X.S. to Father, and awarding Mother partial physical custody during the summer. The trial court awarded the parents shared legal custody. On November 13, 2015, Mother timely filed a notice of appeal and concise statement of errors complained of on appeal pursuant to Pennsylvania Rule of Appellate Procedure 1925(a)(2)(i).[3]

On appeal, Mother raises the following issue for our review.

> Did the [trial c]ourt err in awarding primary custody of the parties' minor child to [Father] and only visitation to [Mother], based on a review of the custody factors and the determination of the best interest of the child?

Mother's Brief at 16.

We consider this issue mindful of our well-settled standard of review.

> In reviewing a custody order, our scope is of the broadest type and our standard is abuse of discretion. We must accept findings of the trial court that are supported by competent evidence of record, as our role does not include making independent factual determinations. In addition, with regard to issues of credibility and weight of the evidence, we must defer to the presiding trial judge who viewed and assessed the witnesses first-hand. However, we are not bound by the trial court's deductions or inferences from its factual findings. Ultimately, the

---

[3] That same day, Mother filed a motion to suspend the trial court's November 4, 2015 order pending this appeal, which was denied by the trial court the same day. Further, on November 16, 2015, the trial court adopted its November 4, 2015 opinion for purposes of Rule 1925(a).

test is whether the trial court's conclusions are unreasonable as shown by the evidence of record. We may reject the conclusions of the trial court only if they involve an error of law, or are unreasonable in light of the sustainable findings of the trial court.

***V.B. v. J.E.B.***, 55 A.3d 1193, 1197 (Pa. Super. 2012) (citations omitted).

"When a trial court orders a form of custody, the best interest of the child is paramount." ***S.W.D. v. S.A.R.***, 96 A.3d 396, 400 (Pa. Super. 2014) (citation omitted). The factors to be considered by a court when awarding custody are set forth at 23 Pa.C.S.A. § 5328(a).

> **§ 5328. Factors to consider when awarding custody**
>
> **(a) Factors.--**In ordering any form of custody, the court shall determine the best interest of the child by considering all relevant factors, giving weighted consideration to those factors which affect the safety of the child, including the following:
>
> > (1) Which party is more likely to encourage and permit frequent and continuing contact between the child and another party.
> >
> > (2) The present and past abuse committed by a party or member of the party's household, whether there is a continued risk of harm to the child or an abused party and which party can better provide adequate physical safeguards and supervision of the child.
> >
> > (2.1) The information set forth in section 5329.1(a) (relating to consideration of child abuse and involvement with protective services).
> >
> > (3) The parental duties performed by each party on behalf of the child.

- 4 -

(4) The need for stability and continuity in the child's education, family life and community life.

(5) The availability of extended family.

(6) The child's sibling relationships.

(7) The well-reasoned preference of the child, based on the child's maturity and judgment.

(8) The attempts of a parent to turn the child against the other parent, except in cases of domestic violence where reasonable safety measures are necessary to protect the child from harm.

(9) Which party is more likely to maintain a loving, stable, consistent and nurturing relationship with the child adequate for the child's emotional needs.

(10) Which party is more likely to attend to the daily physical, emotional, developmental, educational and special needs of the child.

(11) The proximity of the residences of the parties.

(12) Each party's availability to care for the child or ability to make appropriate child-care arrangements.

(13) The level of conflict between the parties and the willingness and ability of the parties to cooperate with one another. A party's effort to protect a child from abuse by another party is not evidence of unwillingness or inability to cooperate with that party.

(14) The history of drug or alcohol abuse of a party or member of a party's household.

(15) The mental and physical condition of a party or member of a party's household.

(16) Any other relevant factor.

23 Pa.C.S.A. § 5328(a).

Instantly, the trial court issued a thorough opinion, discussing each of the Section 5328(a) factors, and explaining its decision to award primary physical custody of X.S. to Father. Trial Court Opinion, 11/4/15, at 2-6. The trial court found that Sections 5328(a)(2), (2.1), (4), (5), (7), (8), (12), and (14) did not weigh in favor of either parent. *Id.* at 3-5. The trial court concluded that Sections 5328(a)(1), (6), (9), (10), (11), (13), (15), and (16) weighed in favor of Father, and that Section 5328(a)(3) weighed in favor of Mother. *Id.* at 2-5. Further, the trial court emphasized that Mother has done everything in her power to make it difficult for Father to spend time with X.S. *Id.* at 2, 4-5. The trial court acknowledged that Mother testified during the custody hearing that she would try to be more cooperative in the future, but it rejected this testimony as incredible. *Id.* at 3. The trial court also explained that it believed Father would be able to provide a more loving and stable environment for X.S. because Father "appears to be more level[-]headed and truthful" than Mother, and because Father's wife can assist him in caring for X.S. *Id.* at 4-5.

In response, Mother discusses the trial court's analysis with respect to the Section 5328(a) factors, and offers her own interpretation as to how the trial court should have evaluated the evidence presented during the custody

hearing. The crux of Mother's argument appears to be that it was improper to award primary physical custody to Father because X.S. has spent the majority of his life residing with Mother, and because Mother is not employed and has more time than Father to care for X.S. Mother's Brief at 18, 22-25. Mother insists that she did not maliciously attempt to prevent Father from exercising partial physical custody of X.S. *Id.* at 21-22, 25. Mother also asserts that there was little evidence presented during the hearing which indicated that Father's home in Alabama is an appropriate place for X.S., and that there was no evidence indicating that intellectual limitations would prevent anyone in Mother's home from caring for X.S. *Id.* at 21-26. Mother suggests that the trial court awarded primary physical custody to Father because the trial court wanted to punish Mother, and that the trial court acted harshly by making this award when there were less "punitive" measures available.[4] *Id.* at 22, 27.

After a thorough review of the record in this matter, we conclude that the trial court did not abuse its discretion or commit an error of law. During the custody hearing, Father testified concerning Mother's refusal to

_____

[4] Mother also states in her brief that the trial court's analysis of the Section 5328(a) factors "seems to hearken back to the previous orders that had been rendered in this case. This would be error, based on cases such as **M.E.V. v. F.P.W.**, 100 A.3d 670, [(Pa. Super. 2014)], which require a contemporaneous review of the circumstances." Mother's Brief at 20-21. We find no support for this claim, as our review of the trial court's opinion makes clear that the trial court based its decision on the circumstances as they existed at the time it entered the subject custody order.

cooperate with Father and Mother's efforts at preventing Father from having any sort of relationship with X.S. Most notably, Father described an incident that took place during the previous summer, when Father drove from Alabama to Pennsylvania to pick up X.S. for his court-ordered period of partial physical custody. Father explained that he and his wife, S.S., were driving through Kentucky when Mother sent a text message stating that she would not permit Father to have custody of X.S., due to X.S. having medical appointments. N.T., 10/21/15, at 27. Mother stated that Father and S.S. could visit X.S. at Mother's home, but that they could not leave with X.S. *Id.* After arriving at Mother's home, Father asked Mother if he could take X.S. to KFC for mashed potatoes, and then to Walmart to purchase a birthday present. *Id.* at 28. Father told Mother that he would bring X.S. back to Mother's home afterward, and Mother consented to this plan. *Id.* Instead, Father and S.S. drove back to Alabama with X.S. *Id.*

During her direct examination, Mother denied sending Father a text message stating that he would not be permitted to exercise his period of partial physical custody. *Id.* at 50. Mother stated, "I didn't say I was going to cancel [the period of partial physical custody]. I asked him if he wanted to work with me around his appointment time, like, if I can get him today for his appointment, or if I have to cancel his appointment." *Id.* Mother insisted that she intended to allow Father to take X.S. that day. *Id.* at 51. Mother testified that Father told her he would bring X.S. back to her home

after taking him to KFC and Walmart. ***Id.*** Instead, Father departed for Alabama without taking any of the clothing that Mother had packed for X.S., or his medications. ***Id.*** at 51-52.

On cross-examination, Father confronted Mother with the text message in question. According to Father, the message contained the following content.

> [T]hey told me at the courthouse I do not have to give him to you and that you can take me for contempt of court, but as long as I have proof that he had to be in Wexford in two weeks, the Judge will not do anything…. I talked to the courthouse themselves. I cannot afford them hospitals out of state and his insurance does not cover down there, so he cannot go with you because he has to be in Wexford in two weeks. I am sorry, [Father]. You can come visit him while you're up here, but you're not taking him. He is staying here. I am taking it back to court.

***Id.*** at 54-55. Mother admitted that she sent the text message as described by Father. ***Id.*** at 55. However, Mother continued to claim that she did not refuse to allow Father to exercise his period of partial physical custody. ***Id.*** at 57.

Additionally, Father cross-examined Mother concerning alleged criminal activity. Father asked Mother if she had any recent "run-ins" with the police, and Mother denied that this was the case. ***Id.*** at 11. Father attempted to impeach Mother using a copy of a police report, but the trial court sustained the objection of Mother's counsel, reasoning that the report was hearsay. ***Id.*** at 11-12. Later, the trial court asked Mother if she had

- 9 -

been convicted of any crimes, and Mother replied that she had. *Id.* at 71. When asked what crime she was convicted of, Mother replied, "I was supposed to throw a pot at [A.F.] and hit him in the face." *Id.* at 72. Upon further questioning by the trial court, Mother stated that she believed she was convicted of simple assault.[5] *Id.*

Thus, the record supports the trial court's decision to award primary physical custody to Father. While it is true that Mother has cared for X.S. for the majority of his life, and that Mother has more time to care for X.S. because she is unemployed, it was reasonable for the trial court to conclude that these considerations were outweighed by other evidence presented during the custody hearing. Awarding primary physical custody of X.S. to Father will allow X.S. to establish a relationship with Father, while also allowing X.S. to maintain his existing relationship with Mother. In contrast, allowing Mother to maintain primary physical custody of X.S. would be potentially disastrous, as Mother has demonstrated that she is unwilling to permit a healthy relationship between X.S. and Father.

In reaching this conclusion, the trial court emphasized the following.

> [W]e note that when the Order was entered on December 8, 2014 we found that [M]other was not particularly cooperative in providing [F]ather with custodial time with [X.S.] At that time it was a very close call as to who should have primary physical

---

[5] A.F. testified that Mother was mistaken, and that she actually pled guilty to disorderly conduct. N.T., 10/21/15, at 94.

custody of [X.S.] and we granted [M]other primary physical custody, mainly because [X.S.] had been with her during his lifetime leading up to that hearing.

It is obvious from the many aspects of the [October 21, 2014] testimony at [the] De Novo hearing that [M]other has continued to make it difficult for [F]ather to have custody with [X.S.] and to communicate with [X.S.] and we did not find [M]other's testimony to be particularly credible.

Trial Court Opinion, 11/4/15, at 2.

In light of the foregoing reasoning, as well as the trial court's discussion of the custody factors, it is abundantly clear why the trial court concluded that Father will be able to provide a more loving and stable environment for X.S. Mother's testimony during the custody hearing was confusing and inconsistent, which supports the trial court's determination that Father is "more level[-]headed and truthful" than Mother, and Mother's relationship with A.F. appears to be unstable and possibly violent given her recent criminal conviction. While Mother contends that the trial court awarded primary physical custody to Father because the court wanted to punish Mother, our review of the record belies this assertion, and confirms that the court based its decision on the best interests of X.S.

Based on the foregoing, we conclude the trial court did not abuse its discretion or commit an error of law. Accordingly, we affirm the trial court's November 4, 2015 order.

Order affirmed.

- 11 -

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 5/6/2016