J-S88002-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| A.F., | IN THE SUPERIOR COURT OF |
| --- | --- |
| Appellant | PENNSYLVANIA |
| v. | |
| J.F., | |
| Appellee | No. 2500 EDA 2016 |

Appeal from the Order Entered July 25, 2016
In the Court of Common Pleas of Northampton County
Domestic Relations at No(s): C-0048-CV-2012-11928

BEFORE: OLSON, RANSOM AND STRASSBURGER,* JJ.

MEMORANDUM BY OLSON, J.:                    **FILED DECEMBER 28, 2016**

A.F. ("Mother"), appeals from the July 25, 2016 order denying her request to relocate with her three minor children. We vacate and remand.

The factual background and procedural history of this case are as follows. The matrimonial union between Mother and J.F. ("Father") produced three children, G.E.F. (born April 2006), G.L.F. (born August 2008), and P.F. (born November 2010) (collectively "the Children"). After P.F.'s birth, the parties divorced. Thereafter, the Honorable Anthony S. Beltrami entered a custody order which provides that

> the parties have shared legal custody, and Mother has primary physical custody. During the school year, Father has partial physical custody every other weekend from 5:15 p.m. on Saturday until 7:30 p.m. [o]n the day before school resumes and dinner visits on Tuesday and Friday nights. During the summer, Father has partial physical custody every other weekend from 5:15 p.m. on Saturday until 10:00 a.m. on

* Retired Senior Judge assigned to the Superior Court

Monday and dinner visits on Tuesday and Friday nights. Father has one week-long summer vacation with the [C]hildren. The parties alternate holidays on a year-to-year basis.

Trial Court Opinion, 7/29/15, at 2.

The parties currently live three blocks from each other in the Easton School District in Northampton County. Both Mother's and Father's parents also live in the Easton area and have frequent interactions with the Children. In 2014, Mother began dating S.K., a train conductor who lives in Sayre, Pennsylvania. Sayre is approximately 169 miles from Easton. On May 1, 2015, Mother filed a notice of proposed relocation in which she sought to move to Sayre with the Children.[1] Father opposed the relocation request. On June 15, 2015, a full evidentiary hearing on the merits of Mother's relocation request occurred before Judge Beltrami.

All three Children have special needs. P.F. is non-verbal, autistic and receives extensive therapy at least five days a week. At the time of the relevant hearings in this case, Mother intended to send P.F. to public school in Easton if she did not move to Sayre. If Mother relocated to Sayre, P.F. would be evaluated by Sayre Area School District for possible placement at the Institute for Child Development ("the Institute"), a specialized school for children with autism located approximately 30 minutes from Sayre. G.E.F. and G.L.F. attend public school in Easton. There are approximately 28-30

---

[1] As part of the relocation request, Mother also sought changes in the parties' custody schedule. These changes, however, were premised on the relocation request being granted. For simplicity, we will simply refer to the filing as a relocation request.

- 2 -

students in G.E.F. and G.L.F's classes in Easton. If Mother relocated to Sayre, G.E.F. and G.L.F. would attend Sayre Area School District schools. Their classes in Sayre would have approximately 10-14 students.

After careful consideration, Judge Beltrami denied Mother's relocation request on July 29, 2015. Mother did not appeal that denial. Although Mother was no longer dating S.K., on April 22, 2016 Mother filed a second notice of proposed relocation in which she sought to relocate to Sayre with the Children.[2] Father once again opposed the relocation request. A hearing on the relocation request was held on June 16, 2016. At that hearing, the Honorable Jennifer R. Sletvold only permitted Mother to present testimony regarding circumstances surrounding P.F.'s education.

Three individuals testified at the June 16, 2016 hearing – Mother, Father, and Linda Matey ("Matey"), an employee of the Institute. Matey testified regarding the programming available to P.F. at the Institute and how that programming would benefit him. After receiving post-hearing submissions by the parties, Judge Sletvold denied Mother's relocation request on July 25, 2016. This timely appeal followed.[3]

Mother presents three issues for our review:

---

[2] **See supra**, note 1.

[3] Mother filed a concise statement of errors complained of on appeal ("concise statement") contemporaneously with her notice of appeal. **See** Pa.R.A.P. 1925(a)(2)(i), (b). On August 16, 2016, Judge Sletvold issued an order which stated that the reasons for her decision were included in her July 25, 2016 opinion. All of Mother's issues raised on appeal were included in her concise statement.

1. Whether [Judge Sletvold] erred in failing to hold a full evidentiary hearing on [M]other's [relocation request and for] failing to permit Mother to produce complete evidence and testimony regarding the custody and relocation factors?

2. Whether [Judge Sletvold] erred in holding that a petition for modification or relocation requires that there be a change of circumstances?

3. Whether [Judge Sletvold] erred in denying [M]other's [relocation request?]

Mother's Brief at 4 (complete capitalization omitted).[4]

In her first issue, Mother argues that Judge Sletvold erred in preventing her from presenting evidence relating to all of the relocation and custody factors. In essence, Mother challenges Judge Sletvold's construction of 23 Pa.C.S.A. § 5337(g)(1). As this requires us to interpret a statute, our standard of review is de novo and our scope of review is plenary. **See Gilbert v. Synagro Cent., LLC**, 131 A.3d 1, 11, n.15 (Pa. 2015). When an interpreting a statute, we are guided by the Statutory Construction Act, 1 Pa.C.S.A. § 1501 *et seq*. **See Pennsylvania Pub. Util. Comm'n v. Andrew Seder/The Times Leader**, 139 A.3d 165, 172 (Pa. 2016) (citation omitted). "The object of all statutory interpretation is to ascertain and effectuate the intention of the General Assembly while also construing each statute to give effect to all of its provisions." **Conestoga Bank v. Tioga Investments II**, 138 A.3d 652, 656–657 (Pa. Super. 2016). "The best indication of this intent is the plain language of the statute."

---

[4] We have re-numbered the issues for ease of disposition.

***Commonwealth v. Schley***, 136 A.3d 511, 516 (Pa. Super. 2016) (citation omitted).

We agree that the trial court erred in limiting the testimony Mother could present at the evidentiary hearing. "Except as set forth in paragraph (3), [which was not invoked in this case,] the court **shall hold an expedited full hearing** on the proposed relocation after a timely objection has been filed and before the relocation occurs." 23 Pa.C.S.A. § 5337(g)(1). After the hearing,

> In determining whether to grant a proposed relocation, the court shall consider the following factors, giving weighted consideration to those factors which affect the safety of the child:
>
> (1) The nature, quality, extent of involvement and duration of the child's relationship with the party proposing to relocate and with the nonrelocating party, siblings and other significant persons in the child's life.
>
> (2) The age, developmental stage, needs of the child and the likely impact the relocation will have on the child's physical, educational and emotional development, taking into consideration any special needs of the child.
>
> (3) The feasibility of preserving the relationship between the nonrelocating party and the child through suitable custody arrangements, considering the logistics and financial circumstances of the parties.
>
> (4) The child's preference, taking into consideration the age and maturity of the child.
>
> (5) Whether there is an established pattern of conduct of either party to promote or thwart the relationship of the child and the other party.

(6) Whether the relocation will enhance the general quality of life for the party seeking the relocation, including, but not limited to, financial or emotional benefit or educational opportunity.

(7) Whether the relocation will enhance the general quality of life for the child, including, but not limited to, financial or emotional benefit or educational opportunity.

(8) The reasons and motivation of each party for seeking or opposing the relocation.

(9) The present and past abuse committed by a party or member of the party's household and whether there is a continued risk of harm to the child or an abused party.

(10) Any other factor affecting the best interest of the child.

23 Pa.C.S.A. § 5337(h).

Judge Sletvold had the authority to take judicial notice of the previous hearing before Judge Beltrami and to prevent repetitive testimony. *See* Pa.R.Evid. 201, 403. The plain language of section 5337(g)(1), however, curtails Judge Sletvold's authority in this area. The statute requires that a **full** hearing, not a limited hearing, be held upon the filing of a relocation request. Therefore, a trial court is not permitted to limit testimony at the hearing to those circumstances which have changed significantly since the prior relocation request. Instead, the moving party must be permitted to present any testimony and/or evidence related to any changed circumstance, however minor, since the previous hearing and any testimony and/or evidence not presented at the previous hearing.

Our interpretation of section 5337(g)(1) is consistent with this Court's child custody jurisprudence. Specifically, this Court has held "that a trial

court may not merely advert to prior, manifestly outdated findings of fact *in lieu* of express and fully explained reconsideration of those factors in the light of any changes in the parties' circumstances that occurred after the prior ruling and attendant explanation." *M.E.V. v. F.P.W.*, 100 A.3d 670, 681 (Pa. Super. 2014).[5]  In *M.E.V.*, the findings relied upon by the trial court were made 17 months prior to the trial court's ruling.  Instead of focusing on the amount of time that had elapsed, however, this Court focused upon various changes in circumstances since the previous custody hearing and ruling thereon.  *See id.* at 677 ("The simplest way to convey the insufficiency of the trial court's reliance upon seventeen-month-old findings in lieu of reviewing the statutory factors anew is to examine, factor by factor, those material considerations that undisputedly have changed[.]").

In this case, although the hearing before Judge Beltrami occurred almost exactly one year prior to the hearing before Judge Sletvold, *M.E.V.*'s rationale still applies.  Judge Sletvold acknowledged that certain circumstances changed since the hearing before Judge Beltrami but declined to allow testimony on all of those changed circumstances.  *See* N.T., 6/16/16, at 13; Trial Court Opinion, 7/25/16, at 5.

---

[5] Although *M.E.V.* involved the section 5328(a) child custody factors, this Court has treated a trial court's obligations when considering the section 5328(a) child custody factors and the section 5337(h) relocation factors similarly, *i.e.*, the trial court is required to conduct a complete analysis under both sections. *See B.K.M. v. J.A.M.*, 50 A.3d 168, 175 (Pa. Super. 2012).

There are several changed circumstances unrelated to P.F.'s education which impact the section 5337(h) factors upon which the trial court denied Mother the opportunity to present evidence. As in **M.E.V.**, we address each of these in turn. Mother attempted to call Jessica Haklar to testify regarding the first and second section 5337(h) factors, *i.e.*, Father's involvement in the Children's lives and G.E.F.'s and G.L.F.'s developmental needs. **See** N.T., 6/16/16, at 14.[6] Mother intended to testify regarding the fifth section 5337(h) factor, *i.e.*, her pattern of promoting the children's relationships with Father through extra visitation on holidays and on Friday evenings. **See id.** at 15. Mother also wished to elicit testimony that Father attempted to thwart her relationship with the Children prior to the hearing before Judge Sletvold, *i.e.*, he told them he would never see them again if they told Judge Sletvold that they wanted to relocate to Sayre. **See id.** at 19.

Mother attempted to testify regarding the sixth and seventh section 5337(h) factors. Specifically, she wanted to testify that more affordable programming was available for the Children in Sayre than in Easton. **See id.** at 20. Furthermore, after the hearing before Judge Beltrami, Mother purchased a house in Sayre while in her previous relocation request she proposed renting in Sayre. It is possible that such a change in proposed

---

[6] Mother's counsel made a lengthy offer of proof prior to calling any witnesses or introducing any evidence at the hearing before Judge Sletvold. Our recitation of the factors discussed during this offer of proof does not indicate that Mother proved these facts. Rather, they are merely illustrative of what testimony a full hearing **may have** produced and how Judge Sletvold **may have** evaluated such testimony under section 5337(h).

living arrangements would impact Mother's financial and emotional well-being as well as impacting the Children's emotional well-being. Mother also sought to introduce evidence showing that she would be permitted to work daylight hours instead of evenings in Sayre which may impact her emotional well-being. *See id.* at 24. Mother attempted to testify regarding the tenth section 5337(h) factor by noting that her parents, who helped her with parental duties, were planning to move approximately 90 minutes south of Easton. *See id.* at 10-11.

In her Rule 1925(a) opinion, Judge Sletvold essentially states that each one of these changes in circumstances from the hearing in front of Judge Beltrami were minor. *See* Trial Court Opinion, 7/25/16, at 5. This may be correct; however, the combination of these minor changes in circumstances may tip the scales whereby relocation to Sayre is in the Children's best interest. The only way to determine this is through a full evidentiary hearing, as provided in section 5337(g)(1), at which a judge assesses the credibility of the witnesses and properly weighs the section 5337(h) factors, as they exist at that point in time, to determine if relocation is appropriate. Then, if relocation is appropriate under section 5337(h), the judge must weigh the custody factors to determine if a change in the parties' custody arrangement is also in the Children's best interest in light of the relocation to Sayre. Therefore, we will remand this case to the Court of Common Pleas of Northampton County for a full evidentiary hearing on

Mother's relocation request. As we are remanding for a new hearing on Mother's relocation request, we decline to address Mother's second and third issues on appeal.

Order vacated. Case remanded. Jurisdiction relinquished.

Ransom, J. joins this memorandum.

Strassburger, J. files a dissenting memorandum.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/28/2016