J-S19045-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| B.C., | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| v. | : | |
| | : | |
| J.M.C. | : | No. 3022 EDA 2015 |

Appeal from the Order entered August 26, 2015
in the Court of Common Pleas of Monroe County,
Civil Division, No(s): 469 DR 2014, 3528 CV 2014

BEFORE:  BENDER, P.J.E., STABILE and MUSMANNO, JJ.

MEMORANDUM BY MUSMANNO, J.:                    **FILED March 24, 2016**

B.C. ("Father") appeals from the Order modifying the Custody Order with respect to his minor daughter, S.C. ("Child").  We affirm.

J.M.C. ("Mother") and Father are the parents of Child, born in 2010. Mother and Father separated as a couple in May 2014, shortly after their rental home was damaged in a fire.  Mother now resides in Slatington, Pennsylvania, and Father resides in Easton, Pennsylvania.

The initial Custody Conference was held on May 19, 2014, and the Custody Conciliator issued a recommendation for shared legal and physical custody, and a 3-day/4-day rotating custody arrangement.  On May 23, 2014, the trial court entered an Interim Order adopting the Conciliator's recommendation.

Father subsequently filed a Petition for Modification and Contempt of Court Order.  Mother filed a Counter-Petition for Modification.  The Custody

Conciliator again issued a recommendation for shared custody, the provisions of which substantially mirrored the original recommendation. On October 3, 2014, the trial court entered an Interim Order adopting the Conciliator's recommendation.

A custody trial was held on July 21, 2015 and August 12, 2015. Because Mother and Father reside in different school districts, and Child was to begin kindergarten in August 2015, both Mother and Father sought primary custody of Child. The trial court thereafter awarded the parties shared legal custody, Mother primary custody during the school year, and the parties shared physical custody during the summer.

Father filed a timely Notice of Appeal and a Pennsylvania Rule of Appellate Procedure 1925(b) Concise Statement.

On appeal, Father raises the following questions for our review:

I. Whether [the trial] court's conclusion [was] unreasonable that factor #1 of the Custody Statute weighed in favor of Mother[,] in [THE] face of evidence that this factor weighed in favor of Father[?]

II. Whether [the trial] court's conclusion [was] unreasonable that factor #8 of the Custody Statute weighed against Father[,] when evidence suggests this factor was neutral[,] or weighed in favor of Father[?]

III. Whether [the trial] court's conclusion was unreasonable that factors #9 [and] #10 of the Custody Statute favored neither party[,] when evidence showed they favored Father[?]

IV. Whether the [trial] court's conclusion was unreasonable [under factor #11, where] Father is only entitled to less than six days per month (every other weekend) with Child (except

- 2 -

summer), despite finding both parents are good parents who live in relatively close proximity[?]

V. Whether [the trial] court's conclusion was unreasonable that factor #12 of the Custody Statute (about child-care arrangements) favors neither party[,] when evidence showed it favored Father[?]

VI. Whether [the trial] court's conclusion that Mother's repeated "sexting[,]" even while driving and with Child[,] did not impact her parenting abilities was unreasonable under the Custody Statute[?]

VII. Whether [the trial] court's failure to order co-parent[ing] counseling, after finding that under factor #13 of [the] Custody Statute[,] the parties have a high level of conflict[,] was unreasonable[?]

Father's Brief at 2-3 (renumbered for ease of disposition).

In custody cases,

our scope [of review] is of the broadest type and our standard is abuse of discretion. We must accept findings of the trial court that are supported by competent evidence of record, as our role does not include making independent factual determinations. In addition, with regard to issues of credibility and weight of the evidence, we must defer to the presiding trial judge who viewed and assessed the witnesses first-hand. However, we are not bound by the trial court's deductions or inferences from its factual findings. Ultimately, the test is whether the trial court's conclusions are unreasonable as shown by the evidence of record. We may reject the conclusions of the trial court only if they involve an error of law, or are unreasonable in light of the sustainable findings of the trial court.

*C.R.F. v. S.E.F.*, 45 A.3d 441, 443 (Pa. Super. 2012) (citation omitted).

Additionally,

[t]he discretion that a trial court employs in custody matters should be accorded the utmost respect, given the special nature of the proceeding and the lasting impact the result will have on the lives of the parties concerned. Indeed, the knowledge

gained by a trial court in observing witnesses in a custody proceeding cannot adequately be imparted to an appellate court by a printed record.

***Ketterer v. Seifert***, 902 A.2d 533, 540 (Pa. Super. 2006) (citation omitted).

In any custody case decided under the Child Custody Act ("Act"),[1] the paramount concern is the best interests of the child. ***See*** 23 Pa.C.S.A. §§ 5328, 5338; ***see also E.D. v. M.P.***, 33 A.3d 73, 80-81 n.2 (Pa. Super. 2011). Section 5328(a), which sets forth a list of sixteen factors that the trial court must consider when making a "best interests of the child" analysis for a custody determination, provides as follows:

**§ 5328. Factors to consider when awarding custody**

**(a) Factors.**—In ordering any form of custody, the court shall determine the best interest of the child by considering all relevant factors, giving weighted consideration to those factors which affect the safety of the child, including the following:

(1) Which party is more likely to encourage and permit frequent and continuing contact between the child and another party.

(2) The present and past abuse committed by a party or member of the party's household, whether there is a continued risk of harm to the child or an abused party and which party can better provide adequate physical safeguards and supervision of the child.

---

[1] ***See*** 23 Pa.C.S.A. §§ 5321 *et seq*. Because the custody hearing was held in July and August 2015, the Act applies to this case. ***See C.R.F.***, 45 A.3d at 445 (holding that, if the custody evidentiary proceeding commences on or after the effective date of the Act, *i.e.*, January 24, 2011, the provisions of the Act apply).

(2.1) The information set forth in section 5329.1(a)(1) and (2) (relating to consideration of child abuse and involvement with protective services).

(3) The parental duties performed by each party on behalf of the child.

(4) The need for stability and continuity in the child's education, family life and community life.

(5) The availability of extended family.

(6) The child's sibling relationships.

(7) The well-reasoned preference of the child, based on the child's maturity and judgment.

(8) The attempts of a parent to turn the child against the other parent, except in cases of domestic violence where reasonable safety measures are necessary to protect the child from harm.

(9) Which party is more likely to maintain a loving, stable, consistent and nurturing relationship with the child adequate for the child's emotional needs.

(10) Which party is more likely to attend to the daily physical, emotional, developmental, educational and special needs of the child.

(11) The proximity of the residences of the parties.

(12) Each party's availability to care for the child or ability to make appropriate child-care arrangements.

(13) The level of conflict between the parties and the willingness and ability of the parties to cooperate with one another.  A party's effort to protect a child from abuse by another party is not evidence of unwillingness or inability to cooperate with that party.

(14) The history of drug or alcohol abuse of a party or member of a party's household.

(15) The mental and physical condition of a party or member of a party's household.

(16) Any other relevant factor.

23 Pa.C.S.A. § 5328;[2] *see also E.D.*, 33 A.3d at 80.

"All of the factors listed in section 5328(a) are required to be considered by the trial court when entering a custody order." *J.R.M. v. J.E.A.*, 33 A.3d 647, 652 (Pa. Super. 2011) (emphasis omitted). Moreover, section 5323(d) mandates that, when the trial court awards custody, it "shall delineate the reasons for its decision on the record in open court or in a written opinion or order." 23 Pa.C.S.A. § 5323(d). The trial court may not merely rely upon conclusory assertions regarding its consideration of the section 5328(a) factors in entering an order affecting custody. *M.E.V. v. F.P.W.*, 100 A.3d 670, 681 (Pa. Super. 2014). However, "[i]n expressing the reasons for its decision, there is no required amount of detail for the trial court's explanation; all that is required is that the enumerated factors are considered and that the custody decision is based on those considerations." *A.V. v. S.T.*, 87 A.3d 818, 823 (Pa. Super. 2014) (citation and quotation marks omitted).

We will address Father's first six claims together. Father contends that the trial court erred in finding that the custody factors at section 5328(a) either weighed in favor of Mother or were neutral. *See* Father's Brief at 15-24.

_____

[2] Effective January 1, 2014, the statute was amended to include an additional factor at 23 Pa.C.S.A. § 5328(a)(2.1) (providing for consideration of child abuse and involvement with child protective services) and, therefore, was in effect at the time of the custody hearing in this matter.

With regard to the factor at section 5328(a)(1), Father asserts that the trial court's conclusion that this factor weighs in favor of Mother is unreasonable. *Id.* at 15-16. Father claims that, contrary to the trial court's findings, Mother is not more likely to encourage continuing contact between Father and Child. *Id.*

With regard to the factor at section 5328(a)(8), Father contends that the trial court's finding that this factor weighs in favor of Mother was erroneous because there was also evidence that might have allowed the trial court to infer that Mother attempted to turn Child against Father. *Id.* at 16-17. Father argues that this factor is either neutral or weighs in favor of Father. *Id.* at 17.

With regard to the factor at section 5328(a)(9), Father asserts that the trial court erred in finding that this factor is neutral, and improperly failed to adequately consider his income, employment and housing in rendering the primary care determination. *Id.* at 17.

With regard to the factor at section 5328(a)(10), Father claims that the trial court's finding that this factor weighs in neither party's favor is erroneous. *Id.* at 17-18. Specifically, Father directs our attention to evidence that he lives in a better school district and has a more regular work schedule than Mother's schedule. *Id.* at 18. Additionally, he argues that he works with Child at night to reinforce what Child learned in school. *Id.*

With regard to the factor at section 5328(a)(11), Father contends that the terms of the custody arrangement are insufficient in light of the proximity of Mother and Father. *Id.* at 23-24. Additionally, he claims that the trial court's Order does not comply with the typical local practice respecting shared physical custody between good parents who live in close proximity. *Id.* at 24.

With regard to the factor at section 5328(a)(12), Father asserts that the trial court's conclusion that this factor does not weigh in favor of either party was unreasonable in light of evidence that tends to favor Father. *Id.* at 18-20. Specifically, Father argues that because he works standard weekly hours, as opposed to Mother's varied retail schedule, he is better able to care for Child himself. *Id.* at 18-19. Father also contends that his childcare arrangements with the Creative Learning Center, where he hopes Child will begin kindergarten, are superior to Mother's arrangement, where maternal grandfather cares for Child. *Id.* at 19-20. Additionally, Father claims that the trial court's finding that Mother will adjust her work schedule is unsupported by the evidence. *Id.* at 20.

Father raises an additional claim, which we will address as "other relevant factors" under section 5328(a)(16). Father contends that the trial court's determination that Mother's "sexting" did not impact her parenting abilities was unreasonable. *Id.* at 21-22. Father argues that Mother's actions distracted her from Child. *Id.*

In its Opinion, the trial court undertook an analysis of the factors under section 5328(a), and determined that it was in Child's best interests to modify the existing custody Order and to grant Mother primary custody during the school year. *See* Trial Court Opinion and Order, 8/26/15, at 3-13. Father's arguments challenge the trial court's credibility determinations and the weight given to each of these factors, and would require this Court to reassess and reweigh the evidence in Father's favor. It is well-established that we cannot disturb the trial court's credibility determinations or reweigh the evidence. *See E.D.*, 33 A.3d at 76 (stating that "with regard to issues of credibility and weight of the evidence, this Court must defer to the trial judge who presided over the proceedings and thus viewed the witnesses first hand"); *see also Robinson v. Robinson*, 645 A.2d 836, 838 (Pa. 1994) (stating that on issues of credibility and weight of the evidence with regard to custody orders, "appellate courts must defer to the findings of the trial judge who has had the opportunity to observe the proceedings and the demeanor of the witnesses."). Although Father is not satisfied with the weight that the trial court afforded to each of the factors in rendering its custody decision, our review of the record reveals that the trial court's findings of fact and conclusions of law are thoroughly supported by the record. *See C.R.F.*, 45 A.3d at 443 (stating that this Court cannot reweigh the evidence supporting the trial court's determinations as long as there is

evidence to support the conclusions). Therefore, we conclude that the trial court did not abuse its discretion, and defer to its custody decision. *See id.*

In his seventh claim, Father argues that, given the trial court's finding, in its section 5328(a)(13) analysis, that Mother and Father have a high level of conflict, the trial court erred by failing to order co-parenting counseling. Brief for Appellant at 20-21.

Section 5333 of the Custody Act provides, in relevant part, that "[t]he court *may*, as part of a custody order, require the parties to attend counseling sessions." 23 Pa.C.S.A. § 5333 (emphasis added). The trial court's power to order co-parenting counseling is discretionary rather than mandatory. Additionally, in light of Mother and Father's contentious relationship, the trial court's Order provided a specific time and location for custody changes, as well as times for calling Child. *See* Trial Court Opinion and Order, 8/26/15, at 17-19. Upon our review, we conclude that the trial court adequately considered the level of conflict between Mother and Father, as required by section 5328(a)(13). *See id.* at 9-10. The trial court did not abuse its discretion or commit an error of law by failing to order co-parenting counseling. *See id.* Thus, we cannot grant Father relief on this claim.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/24/2016

## COURT OF COMMON PLEAS OF MONROE COUNTY
## FORTY-THIRD JUDICIAL DISTRICT
## COMMONWEALTH OF PENNSYLVANIA

B. C.

,

        **Plaintiff**

           **vs.**

J. M. C.

,

        **Defendant**

: NO. 469 DR 2014
: NO. 3528 CV 2014
:
:
:
:
:
:
:
:
: IN CUSTODY

## BACKGROUND

This matter comes before the Court on the Petition of B. C. (Father) regarding modification of custody. J. M. C. (Mother) also seeks modification of custody. They are the parents of S. C., age 5. Hearings were held on July 21, 2015 and August 12, 2015. Both parties seek primary physical custody of their daughter.

The most recent Custody Order provides for shared legal custody and shared physical custody on an equal basis of three (3) days with Father, then four (4) days with Mother, then four (4) days with Father and three (3) days with Mother. The parties have maintained this custody schedule since about the time of their separation in May 2014. S. C. will start kindergarten the week of August 31, 2015, and both parties agree one of them needs to be the primary custodian, since they reside in separate school districts, and about thirty (30) miles from each other. Both parties seek to be the primary custodian, at least during the school week.



0

Both parties lived in Monroe County for the majority of the child's life until May 2014. Mother now lives in Lehigh County, Pennsylvania and Father lives in Northampton County, Pennsylvania. The parties stipulated to keeping this matter in Monroe County, Pennsylvania for now.

## DISCUSSION

A change in physical custody is to be decided in consideration of the factors set forth in 23 Pa. C.S.A. 5328. Those are:

> **(a) Factors.**—In ordering any form of custody, the court shall determine the best interest of the child by considering all relevant factors giving weighted consideration to those factors which affect the safety of the child, including the following:
>
> (1) Which party is more likely to encourage and permit frequent and continuing contact between the child and another party.
>
> (2) The present and past abuse committed by a party or member of the party's household, whether there is a continued risk of harm to the child or an abused party and which party can better provide adequate physical safeguards and supervision of the child.
>
> (2.1) The information set forth in section 5329.1(a) (relating to consideration of child abuse and involvement with protective services)
>
> (3) The parental duties performed by each party on behalf of the child.
>
> (4) The need for stability and continuity in the child's education, family life and community life.
>
> (5) The availability of extended family.
>
> (6) The child's sibling relationships.

2

(7) The well-reasoned preference of the child, based on the child's maturity and judgment.

(8) The attempts of a parent to turn the child against the other parent, except in cases of domestic violence where reasonable safety measures are necessary to protect the child from harm.

(9) Which party is more likely to maintain a loving, stable, consistent and nurturing relationship with the child adequate for the child's emotional needs.

(10) Which party is more likely to attend to the daily physical, emotional, developmental, educational and special needs of the child.

(11) The proximity of the residences of the parties.

(12) Each party's availability to care for the child or ability to make appropriate child-care arrangements.

(13) The level of conflict between the parties and the willingness and ability of the parties to cooperate with one another. A party's effort to protect a child from abuse by another party is not evidence of unwillingness or inability to cooperate with that party.

(14) The history of drug or alcohol abuse of a party or member of a party's household.

(15) The mental and physical condition of a party or member of a party's household.

(16) Any other relevant factor.

23 Pa. C.S.A. §5328.

The first factor to consider in awarding custody is which party is more likely to encourage and permit frequent and continuing contact between the child and another party. This factor slightly favors Mother. Mother's testimony and demeanor at the hearing, and her prior actions, are convincing that she is more likely to encourage contact, even beyond what is Court

3

Ordered. Mother has been more positive about Father than Father has been about Mother. Of particular note by the Court was Father's strong animosity toward Mother due to the reasons for the marital break-up; Father enrolling S.C. in a pre-K program without consulting Mother; Father not considering returning S.C. to Mother's care when he needed a surgical procedure at the time of S.C.'s birthday; and, Father refusing to allow S.C. to be in Mother's care shortly after separation and prior to the first custody conference when S.C. was staying with Father's parents in Maryland. For these reasons, this factor favors Mother as she will be more encouraging and will permit more frequent contact.

The present and past abuse factor is not relevant in this matter. There was no evidence presented that either party has been abusive to each other, or anyone else in the household or to the child. There is no risk of harm to the child from abuse within either household. Furthermore, both parents are equally capable of providing adequate physical safeguards and supervision for the child. Father raised a concern that more convicted sex offenders reside near Mother's residence; however, we note convicted sex offenders reside everywhere, and it is an unfortunate fact of life. It is important that parents supervise and raise their children appropriately regarding matters like this. We find both parents can supervise and protect the child from potential harm from such people.

The consideration of child abuse and involvement with protective services does not apply as a factor. There is no past child abuse or involvement of child protective services.

The parental duties performed by each party on behalf of the child slightly favors Mother. Both parties have cared for the child for significant periods of time following separation. However, while the parties were living together, Mother met most of the child's

4

daily needs as she was a stay-at-home Mother for most of that time. We believe both parties will continue to provide for the child's needs in the future and both will perform parental duties. Mother having performed most of the parental duties prior to the parties' separation combined with the needs the child will have as she gets older, favors Mother having primary physical custody.

The needs for stability and continuity in the child's education, family life and community life favors a change in custody and one parent having primary physical custody during the school week. The parties live about thirty (30) miles away from each other. Mother lives in Slatington, Lehigh County, Pennsylvania, which is in the Northern Lehigh School District. Mother proposes the child living with her and attending elementary school in that school district for kindergarten this school year. Father lives in Forks Township, Northamton County, Pennsylvania in the Easton School District. Father proposes the child living with him and continuing to attend the Creative Learning Center for Kindergarten and then attending elementary school for first grade in the Easton School District. This necessitates a change in the current custody schedule because of the distance the parties reside from one another, and the child starting school.

We find both parties are able to provide stability and continuity in the child's education, family life and community life. Father believes the child would do better if she remains for another year at the Creative Learning Center (CLC) for Kindergarten, before she starts first grade next year in public school. He cites the friends and activities the child is involved with at CLC. However, we believe the child is young enough, and socialized enough, to find new friends and similar activities whether at CLC or in Kindergarten in a public school.

5

A decision about Kindergarten at a program like CLC or in public school is one of personal preference. It was not shown that CLC is the necessary or better placement in Kindergarten for the child. We also find both parents can and will adequately provide the care and attention to the child's educational needs. Other than the need for a primary household for schooling at this time, stability and continuity of the child's family life and community life can be met regardless of whether in Mother's or Father's primary care. Therefore, this is not a factor favoring one party or the other.

Both parties have extended family involved in the child's life. This will not be changed by having one parent as primary custodian instead of the other. Father's parents live in Maryland. Father visits with them in Maryland, and they come to see Father and child. A change in the custody schedule will not effect this relationship. Nor will the selection of one parent or the other as primary custodian. Mother's father lives two (2) miles from Mother. He sees the child regularly, assists with child care, and enjoys his time with the child. A change in the custody schedule, and whether one parent or the other is the primary custodian during the school week will not impact this family relationship. Therefore, this factor does not favor one party more than the other.

The child has no siblings, and therefore, this factor does not apply. The child's preference does not apply as a factor either. The parties stipulated to the child not testifying due to her age. We also find the child does not have the maturity or judgment to adequately express a preference at this time. From the photographs submitted, and the testimony of the parties, it is apparent she enjoys time with both parents and would want to see them both as much as possible.

6

There is a certain amount of animosity and mistrust between the parties. There is some evidence, which we find credible, that Father has attempted to turn the child against Mother. We do not find evidence that Mother does the same. Mother testified the child told her to "stop taking Daddy's money" shortly after she filed for child support. Mother suspects Father has discussed other adult issues with the child that is negative toward her as well. The parties' friend, Megan Hutson, stated that she heard Father say negative things about Mother in front of the child. We find Mother and Ms. Hutson credible in this regard. Father's other testimony about Mother at the hearing, including reasons for the marital break-up and Mother's past employment, together with his demeanor at the hearing also indicates he harbors very negative feelings about Mother. For these reasons, we find Father has attempted to turn child against Mother, and this factor slightly favors Mother.

Both parties are equally capable of maintaining a loving, stable, consistent and nurturing relationship with the child that is adequate for the child's emotional needs. This factor does not favor one party over the other. Both parents are close to and have a loving relationship with the child. They are both consistently involved with the child. Both provide a nurturing environment and relationship with the child. Both parents are stable.

Father believes his housing, work schedule, and proximity to open space and schools creates a more stable and consistent relationship the child needs. Father lives in a two (2) bedroom townhouse, with a large backyard, and close to a school. He works as an IT consultant and is self-employed. Mother resides in a two (2) bedroom apartment in a third floor walk-up apartment in the downtown area of Slatington. There is a park nearby and the school is about one mile away. Mother works as a cashier at Aldi's in Lehighton, Pennsylvania, about a

7

20 minute drive from Slatington. Both parties have resided in the same housing since separation. Although Father is more affluent, has a larger residence in a more suburban area, and usually works from 9-5 Monday through Friday, we do not believe this provides a more stable, consistent, or nurturing relationship with the child for the child's emotional needs.

Although Father's income, employment and housing is arguably better than Mother's, there was no evidence of it impacting the child one way or another right now. Mother provides adequate housing, she has child care while she is working and still spends quality time with the child, and the child is doing fine. Therefore, we find this factor does not favor either party over the other.

We do not find that either party is more likely than the other to attend to the daily physical, emotional, developmental, educational and special needs of the child. Both can adequately provide for these things for the child. The schools for both proposed households are adequate. Both the Easton and Northern Lehigh School Districts have positives and negatives. Easton is a much larger school district encompassing a city and suburban area; Northern Lehigh is a smaller district that is suburban and rural. We don't see significant advantages or disadvantages to either district.

Father has a more regular schedule, but he works outside the home and his employment will also require some child care. Mother's schedule changes, but she has tried to work mostly when the child was in Father's care. Her father assists with child care whenever needed. Mother's father was credible and genuine, and we do not doubt that he will continue to assist Mother and child. We believe Mother will continue to adjust her work schedule to maximize time with the child, particularly during the school week. Therefore, we find both

8

parties are equally capable of providing for these needs of the child, that both will spend time consistently with the child, and both can provide needed stability.

The proximity of the residences allows for a lot of shared time between the parties. This includes weekends and weeknight visits, holidays, and other times with the parent who does not have primary physical custody. The distance and locations between the parties requires one parent to be the primary caretaker during the school week with significant time to the non-custodial parent. This factor will be reflected in the attached Custody Order.

Both parties work and will need child care. Father believes he will need less child care due to his schedule and because he is self-employed. He believes Mother's changing schedule will require her to need more child care. Father also questioned the reliability and/or relationship of Mother with her father, who will provide most of the child care for her. Father works in I.T. and testified he works jobs until completed, usually within a 9-5 workday during the school week. Father's child care is mostly through the CLC. We do not know what his plan will be when the child attends public school next year. Mother and her father were credible. Mother will adjust her schedule as much as she can and her father will provide child care whenever needed. Therefore, we find both parties will be available for the child or have adequate child care, and this factor does not favor either party.

As stated herein, the parties do not have an amicable relationship. There is a high level of conflict between the parties. The parties showed little proof of any ability to cooperate with one another. The parties do not talk to each other, beyond custody matters. Father does not contact Mother regarding child care and pre-school. Mother does not always appear on time for custody exchanges (although we were not convinced as to the extent of that problem as there was

no testimony whether Mother called or not; or whether she was only a few minutes late, or longer periods of time). Neither party offers additional custody time to the other. Mother calls and Father does not always answer. Mother has called after the time Father has put the child to bed. Neither makes concessions for the other. We believe this conflict is caused by both parties and will likely continue until they put the past aside, and work together to co-parent for their daughter. The Order will provide specific times and location for changes of custody and times for calling the child as a result of this conflict.

Both parties admitted to marijuana use in the past. Father also had a DUI in 2004. Based upon the testimony, we find both parties credible that their use of marijuana stopped prior to the birth of their daughter. Father stated his use was to medicate his Crohn's disease, and new medications have alleviated symptoms. Father had concerns about Ms. Hutson remaining in mother's life because of past marijuana use. However, Ms. Hutson was credible that she used to smoke marijuana with Father, and she stopped. Father brought up a failed drug test that caused Mother to be fired from a personal care position in 2006. That was prior to the child's birth and at the same time Mother and Father both admitted marijuana use. We find no evidence of any current use. This is not a factor at this time.

There are no mental conditions of a party or the party's household. Father has Crohn's disease; however, we are not convinced it affects his ability to care for the child. We find his testimony credible that his medications keep symptoms to a minimum and that it has not impacted his ability to care for the child. Mother has no physical conditions that are a concern. Therefore, this is a non-factor.

10

Father raised a few concerns that do not fall directly under the enumerated factors. We find they are not a negative impact to the child at this time. Father testified about the facts occurring at the time the parties separated. Father stopped just short of blaming Mother for the fire that burned down the parties' residence they were renting (her E-cigarette), but there was no proof established at the time of hearing as to the actual cause so no blame will be assigned in this custody matter.

Father also testified about Mother renting her current apartment in Slatington after the fire, without telling Father, and then representing she, Father and child would all live at the apartment. Father felt this was a poor choice and/or intended for the parties' eventual separation. This is not relevant to this custody situation. It may explain one reason for the ultimate separation of the parties, but not as to Mother's care of the child.

Father also testified about Mother going to Father's parents' house in Maryland, where the child was staying after the fire, demanding custody of the child. Father believed it showed Mother making a bad choice and scaring the child, while causing the police to be called. Father insisted the parties agreed the child would stay at his parents for a while. However, testimony also confirmed that Father had filed for custody and was planning to keep the child at his parents' home until the time of the custody conference. We find this incident has no bearing on Mother's ability to care for or parent the child. This was a course of conduct consistent with parties separating and anticipating a custodial fight.

Father also testified about his suspicion that Mother has returned to a prior occupation of stripping. Mother denied this and we find her credible. Mother testified she has not worked as a stripper since 2006, three years before the child was born. We also note that

11

Father met Mother while Mother was working at a strip club called Spankey's West, in Brodheadsville, Pennsylvania, which he frequented. Father apparently had no problem with that occupation at the time he met Mother. She continued in that occupation until at or about the time of the parties' marriage on May 27, 2006. Therefore, this is not a factor.

Father also provided extensive testimony and evidence concerning text messages Mother was sending and receiving with a former high school boyfriend. The texting was of a sexual nature. It appears to have been the catalyst for the marital breakup. The content of the texting itself has no correlation with Mother's ability to parent the child appropriately.

Father produced the actual text messages sent on a day in April 2014. Father contends the times of the texts coincide with times that the child was in Mother's care that day. Father appears to have introduced the actual text messages into evidence to show not only what he believes was inappropriate supervision due to the number of texts sent, but also the content of the texts. The texts were between two consenting adults and the content has no bearing on this matter. We note Father even notified Mother's employer about one of the texts that included a photo taken in the bathroom of Mother's work place prior to her shift. These matters relate to Father's feelings about his relationship with Mother and the marital breakup, and not something that is relevant here, concerning parenting ability and the best interests of the child.

Father's concerns about the number of texts and location of texts sent and received on a day she had the child in the car with her in April 2014 are more legitimate. Father expressed concern Mother was not watching the child closely and/or texting while in the car with the child. Mother testified that she regretted the texting on the day in question. She stated most were sent at a park she went to with her daughter, and in the parking lot of stores. She said the

12

ones sent while driving were on Route 209 on the way to work, when the child was not with her. Father's exhibit of a map showing the locations of the texts plotted by coordinates, confirms Mother's testimony. Therefore, we are not as concerned as Father with the texts sent on that day in April 2014. We agree time with the child would be better spent engaging with the child instead of sending repeated texts. Also, Mother should not text while driving, especially with her child in the car, due to the dangers of an accident. However, this incident does not overcome the other factors in Mother's favor which have greater weight.

Taking all of these factors together, we find Mother should have primary physical custody, with substantial time with Father on weekends, a weeknight, shared holidays and summer vacation. The parties should continue to share legal custody. The parties shall follow the attached Order, unless they can mutually agree otherwise.

13

# COURT OF COMMON PLEAS OF MONROE COUNTY
## FORTY-THIRD JUDICIAL DISTRICT
## COMMONWEALTH OF PENNSYLVANIA

B. C.

Plaintiff

: NO. 469 DR 2014
: NO. 3528 CV 2014
:
:
:
vs. :
:
J. M. C. :
:
:
:
Defendant : IN CUSTODY

## ORDER

AND NOW, this 26th day of August, 2015, after a hearing before the Court, wherein Father, **B. C.** , was present represented by Michelle F. Farley, Esquire, and Mother, **J. M. C.** , was present represented by Nancy G. Aaroe, Esquire, it is the Order of this Court with respect to the parties' minor child, **S. C.** , born February 5, 2010, as follows:

## BACKGROUND

This hearing was scheduled upon Father's Petition for Modification. Mother filed a Counter-Petition for Modification as well.

## 1. SHARED LEGAL CUSTODY

Mother and Father shall share legal custody of their child. For purposes of this Order, "shared legal custody" shall mean:

14

(a) All decisions affecting the child's growth and development, including but not limited to education, choice of school, medical and dental treatment, religious training, athletic pursuits and extracurricular activities shall be considered major decisions, and shall be made by the parties jointly after discussion and consultation with each other with a view toward obtaining and following a harmonious policy in the child's best interest;

(b) Each party agrees to keep the other informed of the progress of the child's education and social adjustment. Each party agrees not to impair the parties' right to shared legal or physical custody of the child. Each party agrees to give support to the other in the role as parent and take into account the consensus of the other for the physical and emotional well-being of the child with the recognition that their life styles may be different;

(c) While in the presence of the child, neither party shall make or permit any other person to make any remarks or do anything which would in any way be construed as derogatory or uncomplimentary to the other parent. It shall be the express duty of each parent to uphold the other parent as one whom the child should love and respect;

(d) It shall be the obligation of each parent to make the child available to the other in accordance with the following schedule and to encourage her to participate in the plan hereby . set forth;

(e) Each parent shall have the duty to notify the other of any event or activity that could reasonably be expected to be of a significant concern to the other parent or to the child;

(f) The parents shall communicate with one another concerning any parenting issues requiring consultation and agreement regarding a proposed modification of the custody schedule which may, from time to time, become necessary, and shall specifically not use the

15

child as a messenger at any time. Neither party shall discuss with the child any proposed changes to this schedule or any other issue requiring consultation and agreement prior to discussing the matter and agreement with the other parent;

(g) With regard to any emergency decisions which must be made, the parent with whom the child is physically residing at the time shall be permitted to make a decision necessitated by the emergency without consulting the other parent in advance; however, that parent shall inform the other of the emergency and consult with him or her as soon as possible. Day to day decisions of a routine nature will be the responsibility of the parent having physical custody at that time;

(h) Mother and Father agree to share complete and full information from any doctor, dentist, teacher or other authority, and each parent may have copies of any reports given to them as a parent. Each parent shall also request any authority to forward copies to both parents at their respective addresses. Such documents include, but are not limited to, medical reports, athletic and school reports, birth certificates, etc. Both parents may and are encouraged to attend conferences and activities with the child. Both parents shall be listed with any school or day care center as parents to be contacted in the event of an emergency and to be notified regarding school events. Mother and Father agree to share copies of any school notices in a timely fashion;

(i) Both parents shall attempt to avoid scheduling any activities or appointments for the child which would require her attendance or participation during the time when she is scheduled to be in the physical custody of the other parent without the parent's prior approval;

16

however, both parents agree to cooperate and be flexible in accommodating the child's scheduled activities.

## 2. SHARED PHYSICAL CUSTODY

Mother shall have primary physical custody of the minor child subject to Father's periods of partial physical custody as follows:

(a) Every other weekend from 5:30 p.m. Friday to 7:30 p.m. Sunday, beginning with Friday, September 4, 2015;

(b) Every Wednesday from 5:00 p.m. to 7:30 p.m., beginning Wednesday, September 2, 2015;

(c) Starting the first full week of the child's summer vacation from school, Father shall have one (1) full week of uninterrupted physical custody, then Mother shall have one (1) full week of uninterrupted physical custody and continuing on a rotating basis until the weekend prior to the child's first day of school.

(d) Any other time the parties mutually agree.

## 3. TRANSPORTATION

In order to facilitate the exchange of partial physical custody of the minor child, it shall be the responsibility of the parties to pick up and deliver the child to the other parent in the parking lot of the Golden Corral Restaurant located at the Lehigh Valley Mall, Whitehall, Pennsylvania, in order that each parent may exercise their respective rights of partial physical custody of the minor child. Mother and Father shall transfer the child in a registered and insured vehicle, said vehicle shall be operated by an insured and licensed driver. Appropriate passenger restraint devices shall be utilized by the child while being transported. The child shall be

17

transported with an appropriate car seat which complies with the laws of the Commonwealth of Pennsylvania in the back seat of the motor vehicle.

## 4. HOLIDAYS

The following holiday schedule supersedes all other partial and vacation custody schedules established in this Order:

The parties shall alternate the major holidays. The alternating holiday schedule shall include the holidays of New Year's Day, President's Day, Easter, Memorial Day, Fourth of July, Labor Day, and Thanksgiving. Mother shall have partial custody on Mother's Day and Father shall have partial custody on Father's Day. Those periods of partial custody for which no times for exchange were heretofore scheduled shall begin at 9:00 a.m. and end at 7:30 p.m. These periods of Holiday custody shall begin with Mother on Labor Day 2015.

The parties shall alternate Christmas. In 2015, Father shall have physical custody of the child from Noon on Christmas Eve continuing until Noon on Christmas Day. Mother shall have physical custody of the child from Noon on Christmas Day until Noon on December 26th. The above period shall alternate each and every year.

In the event that a holiday to which Mother or Father is entitled shall fall within a day prior or subsequent to a weekend period of partial custody to which Mother or Father would also be entitled, that period of weekend partial custody shall be extended to include Mother's or Father's period of holiday partial custody.

## 5. TELEPHONE ACCESS

Each parent shall allow the other parent to have private, liberal and reasonable telephone access with the minor child during that parent's period of partial custody. This shall

18

include the child initiating such contact. Reasonable telephone access shall be construed to be during the child's normal waking hours, emergencies excepted. If the calling parent leaves a message at the residence of the custodial parent, custodial parent shall require the child to return the telephone call to the non-custodial parent within a reasonable period of time. Telephone calls shall not be ignored by the parties.

## 6. NOTICE: CHANGE OF RESIDENCE OR RELOCATION

Before a party may relocate the child or change the residence of the child in a manner which significantly impairs the ability of other individuals with custody rights to the child to exercise those rights, the party must comply with the requirements and obligations of Pennsylvania's Custody Law set forth in 23 Pa. C.S.A. 5337.

BY THE COURT:

_____
DAVID J. WILLIAMSON, J.

cc:     Michelle F. Farley, Esquire
        Nancy G. Aaroe, Esquire
        Plaintiff
        Defendant
        Custody Conciliation
                B.C.       J.M.C.
DJW2015-085 ▓▓▓▓ v ▓▓▓▓ 469 DR 2014 3528 CV 2014.docx

2015 AUG 26 AM 11 14
MONROE COUNTY, PA
PROTHONOTARY

19