J-S61043-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| N.K. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| v. | : | |
| | : | |
| G.M. | : | |
| | : | |
| v. | : | |
| | : | |
| M.L.B. and K.B., | : | |
| | : | |
| Appellants | : | No. 453 WDA 2016 |

Appeal from the Order March 1, 2016
in the Court of Common Pleas of Erie County,
Civil Division, No(s): 12642-2014

BEFORE: PANELLA, LAZARUS and MUSMANNO, JJ.

MEMORANDUM BY MUSMANNO, J.: **FILED SEPTEMBER 14, 2016**

M.L.B. and K.B. ("Paternal Grandparents") appeal from the Order awarding N.K. ("Mother") and G.M. ("Father") sole legal custody and primary physical custody of A.M. (d/o/b 8/3/13) ("Child"), and partial physical custody to Paternal Grandparents. We affirm.

Following Child's birth, Mother and Father resided at their home in Springfield, Pennsylvania. In November 2013, Mother and Child moved into Paternal Grandparents' home for about one month due to an Erie County Office of Children and Youth ("OCY") investigation into Father. Mother and Child again stayed with Paternal Grandparents between July and September 2014. On September 22, 2014, Mother filed a Complaint for Custody seeking sole legal and physical custody of Child. On October 28, 2014, the

trial court entered an Order awarding Mother and Father shared legal and physical custody. Mother and Father alternated seven-day periods of physical custody, with Father's custody occurring at Paternal Grandparents' home due to the OCY investigation.[1]

In September 2015, Father began living with Mother, and removed Child from Paternal Grandparents' home. Paternal Grandparents filed a Motion to Intervene and Motion for Special Relief. On October 22, 2015, the trial court granted Paternal Grandparents standing in the matter, and awarded physical custody of Child to Paternal Grandparents and supervised visitation to Mother and Father. In November 2015, Paternal Grandparents filed a Complaint for Modification of Custody. Thereafter, Mother filed a Motion to Schedule Custody Trial.

On December 7, 2015, the trial court entered an Order, wherein the parties agreed that, on a temporary basis, they would share legal and physical custody of Child, that Paternal Grandparents would have primary physical custody of Child, and Mother and Father would have partial physical custody. Following the custody trial, the trial court considered the factors listed at 23 Pa.C.S.A. § 5328(a),[2] and entered an Order awarding Mother and Father sole legal custody and primary physical custody. The trial court

---

[1] OCY's investigation ultimately determined that the allegations against Father were unfounded. **See** Trial Court Opinion, 3/1/16, at 1 n.1.

[2] Section 5328(a) sets forth a list of sixteen factors that the trial court must consider when making a "best interests of the child" analysis for a custody determination.

awarded Paternal Grandparents partial physical custody the first and third Sundays of each month, from 10:00 a.m. to 4:00 p.m.

Paternal Grandparents filed a timely Notice of Appeal and a Pennsylvania Rule of Appellate Procedure 1925(b) Concise Statement.

On appeal, Paternal Grandparents raise the following questions for our review:

A. Did the [trial] court err in determining that factor 3 ([23] Pa.C.S.A. [§] 5328(a)(3)[)] favor [Mother and Father]?

B. Did the [trial] court err in determining that factor 4 favored [Mother and Father]?

C. Did the [trial] court err in determining that factor 9 favored [Mother and Father]?

D. Did the [trial] court err in determining that factor 10 favored [Mother and Father]?

E. Did the [trial] court err in determining that factor 12 favored [Mother and Father]?

F. Did the [trial] court err in determining that factor 13 favored [Mother and Father]?

G. Did the trial court err in ignoring evidence of irresponsible alcohol abuse by [Mother and Father] and finding factor 14 inapplicable?

Brief for Appellants at 7 (capitalization omitted).

In custody cases,

our scope [of review] is of the broadest type and our standard is abuse of discretion. We must accept findings of the trial court that are supported by competent evidence of record, as our role does not include making independent factual determinations. In addition, with regard to issues of credibility and weight of the evidence, we must defer to the presiding trial judge who viewed

and assessed the witnesses first-hand. However, we are not bound by the trial court's deductions or inferences from its factual findings. Ultimately, the test is whether the trial court's conclusions are unreasonable as shown by the evidence of record. We may reject the conclusions of the trial court only if they involve an error of law, or are unreasonable in light of the sustainable findings of the trial court.

*C.R.F. v. S.E.F.*, 45 A.3d 441, 443 (Pa. Super. 2012) (citation omitted).

Additionally,

[t]he discretion that a trial court employs in custody matters should be accorded the utmost respect, given the special nature of the proceeding and the lasting impact the result will have on the lives of the parties concerned. Indeed, the knowledge gained by a trial court in observing witnesses in a custody proceeding cannot adequately be imparted to an appellate court by a printed record.

*Ketterer v. Seifert*, 902 A.2d 533, 540 (Pa. Super. 2006) (citation omitted).

In any custody case decided under the Child Custody Act ("Act"),[3] the paramount concern is the best interests of the child. *See* 23 Pa.C.S.A. §§ 5328, 5338; *see also E.D. v. M.P.*, 33 A.3d 73, 79 (Pa. Super. 2011). Section 5328(a) provides as follows:

### § 5328. Factors to consider when awarding custody

**(a) Factors.**—In ordering any form of custody, the court shall determine the best interest of the child by considering all relevant factors, giving weighted consideration to those factors which affect the safety of the child, including the following:

---

[3] *See* 23 Pa.C.S.A. §§ 5321 *et seq*. Because the custody hearing was held in February 2016, the Act applies to this case. *See C.R.F.*, 45 A.3d at 445 (holding that, if the custody evidentiary proceeding commences on or after the effective date of the Act, *i.e.*, January 24, 2011, the provisions of the Act apply).

(1) Which party is more likely to encourage and permit frequent and continuing contact between the child and another party.

(2) The present and past abuse committed by a party or member of the party's household, whether there is a continued risk of harm to the child or an abused party and which party can better provide adequate physical safeguards and supervision of the child.

(2.1) The information set forth in section 5329.1(a)(1) and (2) (relating to consideration of child abuse and involvement with protective services).

(3) The Paternal duties performed by each party on behalf of the child.

(4) The need for stability and continuity in the child's education, family life and community life.

(5) The availability of extended family.

(6) The child's sibling relationships.

(7) The well-reasoned preference of the child, based on the child's maturity and judgment.

(8) The attempts of a parent to turn the child against the other parent, except in cases of domestic violence where reasonable safety measures are necessary to protect the child from harm.

(9) Which party is more likely to maintain a loving, stable, consistent and nurturing relationship with the child adequate for the child's emotional needs.

(10) Which party is more likely to attend to the daily physical, emotional, developmental, educational and special needs of the child.

(11) The proximity of the residences of the parties.

(12) Each party's availability to care for the child or ability to make appropriate child-care arrangements.

(13) The level of conflict between the parties and the willingness and ability of the parties to cooperate with one another. A party's effort to protect a child from abuse by another party is not evidence of unwillingness or inability to cooperate with that party.

(14) The history of drug or alcohol abuse of a party or member of a party's household.

(15) The mental and physical condition of a party or member of a party's household.

(16) Any other relevant factor.

23 Pa.C.S.A. § 5328;[4] *see also E.D.*, 33 A.3d at 79 n.2.

"All of the factors listed in section 5328(a) are required to be considered by the trial court when entering a custody order." *J.R.M. v. J.E.A.*, 33 A.3d 647, 652 (Pa. Super. 2011) (emphasis omitted). Moreover, section 5323(d) mandates that, when the trial court awards custody, it "shall delineate the reasons for its decision on the record in open court or in a written opinion or order." 23 Pa.C.S.A. § 5323(d). The trial court may not merely rely upon conclusory assertions regarding its consideration of the section 5328(a) factors in entering an order affecting custody. *M.E.V. v. F.P.W.*, 100 A.3d 670, 681 (Pa. Super. 2014). However, "[i]n expressing the reasons for its decision, there is no required amount of detail for the trial court's explanation; all that is required is that the enumerated factors are considered and that the custody decision is based on those considerations."

---

[4] Effective January 1, 2014, the statute was amended to include an additional factor at 23 Pa.C.S.A. § 5328(a)(2.1) (providing for consideration of child abuse and involvement with child protective services) and, therefore, was in effect at the time of the custody hearing in this matter.

***A.V. v. S.T.***, 87 A.3d 818, 823 (Pa. Super. 2014) (citation and quotation marks omitted).

We will address Paternal Grandparents' claims together. Paternal Grandparents contend that the trial court abused its discretion in finding that the custody factors at section 5328(a) either weighed in favor of Mother and Father or were neutral. ***See*** Brief for Appellants at 10-16.

With regard to the factor at section 5328(a)(3), Paternal Grandparents contend that the trial court's conclusion that this factor weighs in favor of Mother and Father is unreasonable. ***Id***. at 10-11. Paternal Grandparents claim that the trial court merely relied upon the fact that Mother and Father were potty training Child in weighing this factor in their favor. ***Id***. Paternal Grandparents argue that, contrary to the trial court's findings, they also engaged Child in potty training. ***Id***. at 11. Paternal Grandparents further argue that any issues relating to the fact that paternal grandfather has never changed Child's diaper were trivial. ***Id***. Paternal Grandparents also assert that paternal grandfather's statement that he did not want to share legal custody of Child was irrelevant, as Mother and Father stated that they did not want to share legal custody. ***Id***.

With regard to the factor at section 5328(a)(4), Paternal Grandparents contend that the trial court erroneously weighed this factor in favor of Mother and Father. ***Id***. at 11-12. Paternal Grandparents argue that the trial court's finding that Mother and Father provide a stable residence for Child is

belied by the record. *Id*. at 12. Paternal Grandparents point out that Child has spent the majority of her life in their home, and had only resided with Mother and Father outside of their home for three to four months of her life. *Id*. Paternal Grandparents assert that both Mother and Father had moved numerous times throughout Child's life. *Id*. Paternal Grandparents also claim that the trial court erroneously relied on the potty training in weighing this factor. *Id*.

With regard to the factor at section 5328(a)(9), Paternal Grandparents contend that the trial court erred in weighing this factor in favor of Mother and Father. *Id*. at 12-13. Paternal Grandparents argue that the trial court's finding that Mother and Father's ability to communicate with each other, to provide Child with stability with nap schedules, and to meet Child's emotional needs was erroneous in light of the evidence. *Id*. Paternal Grandparents point out that, while paternal grandfather had difficulty communicating with Mother and Father, paternal grandmother texted with Mother and Father. *Id*. at 12. Paternal Grandparents further argue that contrary to the trial court's finding, Mother and Father did not have a "strong bond" with Child. *Id*. at 13.

With regard to the factor at section 5328(a)(10), Paternal Grandparents contend that the trial court erroneously weighed this factor in favor of Mother and Father. *Id*. at 13-14. Paternal Grandparents argue that the trial court mistakenly found that they did not follow Child's potty training

schedule and that paternal grandfather did not want to share legal custody of Child. *Id*. at 13. Paternal Grandparents note that Child spent the majority of her life in their home. *Id*.; *see also id*. at 13-14 (wherein Paternal Grandparents argue that in the temporary Order entered on October 22, 2015, the trial judge returned Child to their care to maintain the status quo). Paternal Grandparents assert that they paid for Child's health insurance and transported Child to all appointments. *Id*. at 14. Paternal Grandparents also claim that Mother and Father had to beg strangers to secure adequate clothing and transportation for Child, and that Father admitted that he was a "work in progress" as a parent. *Id*. Paternal Grandparents argue that the uncontroverted evidence demonstrated that they attend to all of Child's needs, and that the trial court's reliance on potty training and confusion of sharing legal custody was unreasonable. *Id*.

With regard to the factor at section 5328(a)(12), Paternal Grandparents argue that the trial court erred in finding this factor in favor of Mother and Father. *Id*. at 15. Paternal Grandparents contend that the trial court weighed this factor in favor of Mother and Father based upon Mother's unemployment and ability to watch Child and continue Child's routine. *Id*. Paternal Grandparents point out that Mother stated that she planned on returning to work. *Id*. Paternal Grandparents claim that the evidence demonstrated that they were more than capable of caring for child. *Id*.

With regard to the factor at section 5328(a)(13), Paternal Grandparents contend that the trial court erroneously weighed this factor in favor of Mother and Father. *Id*. at 15-16. Paternal Grandparents argue that the trial court ignored the evidence in finding that Mother and Father had no communication or cooperation issues. *Id*. at 15. Paternal Grandparents point out that Mother had to sue Father for custody and Father had previously kicked Mother out of their residence. *Id*. Paternal Grandparents assert that while paternal grandfather made some confusing statements about sharing legal custody, paternal grandmother was willing to cooperate with Mother and Father. *Id*. at 15-16.

With regard to the factor at section 5328(a)(14), Paternal Grandparents assert that the trial court's conclusion that this factor does not weigh in favor of either party was unreasonable in light of the evidence. *Id*. at 16. Paternal Grandparents point out that Father, Mother, and Child had to be picked up from a downtown Erie biker rally because Father and Mother were too intoxicated to drive. *Id*. Paternal Grandparents additionally point out that Mother was previously subjected to random urinalysis screens by OCY. *Id*.

Here, the trial court undertook an analysis of the factors under section 5328(a), and determined that it was in Child's best interests to grant Mother and Father sole legal and primary physical custody. *See* Trial Court Opinion, 3/1/16, at 2-8. Paternal Grandparents' arguments challenge the trial court's

credibility determinations and the weight given to each of these factors, and would require this Court to reassess and reweigh the evidence in their favor. It is well-established that we cannot disturb the trial court's credibility determinations or reweigh the evidence. *See E.D.*, 33 A.3d at 76 (stating that "with regard to issues of credibility and weight of the evidence, this Court must defer to the trial judge who presided over the proceedings and thus viewed the witnesses first hand"); *see also Robinson v. Robinson*, 645 A.2d 836, 838 (Pa. 1994) (stating that on issues of credibility and weight of the evidence with regard to custody orders, "appellate courts must defer to the findings of the trial judge who has had the opportunity to observe the proceedings and the demeanor of the witnesses."). Although Paternal Grandparents are not satisfied with the weight that the trial court afforded to each of the factors in rendering its custody decision, our review of the record reveals that the trial court's findings of fact and conclusions of law are supported by the record. *See C.R.F.*, 45 A.3d at 443 (stating that this Court cannot reweigh the evidence supporting the trial court's determinations as long as there is evidence to support the conclusions). Therefore, while we are aware of Paternal Grandparents' love for Child, we conclude that the trial court did not abuse its discretion, and defer to its

J-S61043-16

custody decision.  ***See id***.[5]

     Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/14/2016

---

[5] In its Rule 1925(a) Opinion, the trial court cited to 23 Pa.C.S.A. § 5327(b), and noted that Paternal Grandparents did not establish by clear and convincing evidence that they should be awarded custody.  ***See*** Rule 1925(a) Opinion, 4/5/16, at 1.  Section 5327(b) states that "[i]n any action regarding the custody of the child between a parent of the child and a nonparent, there shall be a presumption that custody shall be awarded to the parent.  The presumption in favor of the parent may be rebutted by clear and convincing evidence."  23 Pa.C.S.A. § 5327(b).  While Paternal Grandparents point out that no mention of section 5327(b) was made at trial, they explicitly state that they are not raising any allegation of error regarding section 5327(b) on appeal.  ***See*** Brief for Appellants at 10.